The Jeffersonville, Madison and Indianapolis Railroad Company *v.* Dunlap.

THE JEFFERSONVILLE, MADISON AND INDIANAPOLIS RAILROAD COMPANY *v.* DUNLAP.

SHERIFF'S RETURN—OBJECTIONS TO.—An objection that the return of the officer to a summons is "insufficient," is too general to raise any question.

RAILROADS.—SERVICE OF PROCESS.—In actions against railroads for the killing of stock by their trains, the summons may, under section 2 of the act of 1863 (Acts 1863, p. 187), be served upon a conductor, but the statute does not require such service, and service upon any agent of the corporation, as authorized by section 36 of the code, or by the act of *March* 4, 1853, is good.

INJURIES TO ANIMALS.—The statute upon the subject of the liability of railroads for stock killed, where the road is not fenced, gives to the want of a proper fence the same effect that negligence in the management of the train would otherwise involve.

SAME.—The act of 1863, upon this subject, having been passed in view of the decisions of this court, that the liability under the statute of 1853, upon the same subject, extended to cases where the negligence of the owner contributed to the injury, by permitting the animal to wander upon lands adjoining the track, the new act must be construed in the same way.

SAME.—But if the conduct of the owner is of such a character as to justify the belief that he desired the injury to happen, the railroad company will not be liable, though the road is not fenced.

NEGLIGENCE.—PLEADING.—To an action against a railroad company for killing a horse, the road not being fenced, it was answered that the horse was killed without any negligence or fault on the part of the defendant, and because of the gross negligence of the plaintiff.

*Held,* that the particular act or omission of the plaintiff, in which the alleged gross negligence consisted, should have been averred, and that for want of this the answer was bad, even if it would otherwise have been a good defense.

APPEAL from the *Johnson* Common Pleas.

FRAZER, J.—This was a suit against the appellant for the killing of the appellee's horse by the cars of the appellant. The complaint was in two paragraphs. The first alleged that the railroad was not fenced, "at the time when and place where" the horse was run over and killed. By the second paragraph, the right of action was bottomed upon the negligence of the defendant's servants. The sheriff's return to the summons was as follows: "Served the within

on *James H. McClellan, Jeffersonville, Madison and Indiana-polis Railroad Agent* at *Franklin,* and *Owen Frost, Jefferson-ville Railroad Passenger Conductor,* by reading to and in the hearing of the same." There was a motion overruled to set aside the return, for the following reasons: **1.** Because it was insufficient. **2.** It should have been served, by copy, on a conductor of a train passing through the county. The first of these objections was too general; it pointed out no particular objection to the return, and was, therefore, rightly disregarded. A different rule would sanction a prac-tice tending to mere vexation, and hindering instead of aiding in the administration of justice. A blind motion, suggesting no definite ground of objection to the return, would put the court upon a general search, and operate as a trap, when, if the defect were pointed out, it might be cured by speedy amendment by the officer, or if that could not be done, it is fair to suppose that the court would sus-tain the motion, and thus avoid any opportunity for the vexation and delay of an appeal to this court. Such ques-tions, merely dilatory, and in no manner touching the mer-its of the controversy, are not favored by previous decisions of this court.

The second objection made to the sufficiency of the return is definite. But we think it was correctly overruled. The third section of the act of 1863, (p. 187,) authorizes service, by copy, upon any conductor of a train pass-ing through the county, in actions for killing or inju-ring animals upon railroads not securely fenced; but that statute does not require such service. It does not, there-fore, render insufficient service upon any agent of the cor-poration, as authorized by the 36th section of the code, and by the act of *March* 4, 1853. Sess. Laws 1853, p. 102, and Laws Spec. Sess. 1861, p. 78. We do not overlook the fact that the return of service upon the station agent was defective, in not showing that the chief officer of the corporation was not found in the county. That objection was not made below, and is not made even here.

But there is still another reason why the motion to set aside the service upon the second ground should have been overruled. The second paragraph of the complaint was the ordinary action for negligence, and there is nothing in the act of 1863, relied upon by the appellant, which at all touches the subject of process in such a case.

The defendant pleaded: 1. General denial. 2. To the first paragraph of the complaint, that the horse was killed without any fault or negligence of the defendant, and because of the gross negligence of the plaintiff. It is assigned for error, that a demurrer to this second paragraph was sustained. The statute of 1863, already referred to, made the defendant liable, the road being unfenced, " without regard to the question whether such killing was the result of willful misconduct or negligence, or the result of unavoidable accident." Sec. 5. Undoubtedly the misconduct and negligence of the railroad company is meant to be referred to by the statute. It was intended that the absence of a sufficient fence should have the effect to create a liability for the destruction or injury of animals by a railroad train that negligence or willful misconduct in the management of the train would otherwise involve. And, indeed, the act of 1863 was passed in full view of repeated decisions of this court construing the act of 1853, which uses the same language, as creating the liability, even though the plaintiff had been guilty of negligence contributing to produce the injury, by permitting the animal to wander upon lands adjoining the track of the railroad. *M. & I. R. R. Co.* v. *Whiteneck*, 8 Ind. 217 ; *I. & C. R. R. Co.* v. *Townsend*, 10 *id.*, 38 ; *N. A. & S. R. R. Co.* v. *Tilton*, 12 *id.*, 3 ; *Same* v. *Maiden*, *id.* 10 ; *I. & C. R. R. Co.* v. *Guard*, 24 *id.*, 222 ; *Same* v. *McKinney*, *id.* 283. To this extent, at least, then, the act of 1863 must be held to go, and so far the question ought not longer to be deemed open to discussion here.

But in *Knight, Admr.*, v. *The T. & W. R. R. Co.*, 24 Ind. 402, it was held that where the negligence of the plain-

tiff was so gross as to show a willingness that the animal should be killed, there could be no recovery, though the road was not fenced. So, very clearly, if the owner drives his animal upon the track, that it may be killed, or allows it to wander under such circumstances as justify the conclusion that he desires that result, it cannot be supposed that the legislature intended that the railroad company should be liable, on account of its failure to fence. These would be cases of an exposure of the property, with the fraudulent intent to obtain its value by suit; and the courts are not at liberty to hold that by this statute the legislature meant to sanction such iniquity. The language employed indicates no such purpose.

The averment of the paragraph of the answer under examination is, that the horse "was killed by and on account of the gross negligence of said plaintiff, and without any fault or negligence of said defendant, its servants or employees." It is argued that this general allegation of gross negligence is not sufficient; that it is but a conclusion; that the facts should have been stated; and *The City of Buffalo* v. *Holloway*, 3 Seld. 493, and *Seymour* v. *Maddox*, 16 Q. B. 326, are cited in support of the position. We think that those cases do not go to the point. The *gravamen* in each of those cases was, that by virtue of a contract it became the duty of the defendant to do certain things which he neglected to do, whereby the plaintiff was damaged. It did not appear, from the facts stated, that the duty was imposed, and it was merely held that the averment that the duty existed was alleging a conclusion of law, and not a fact. This was in accordance with a rule of pleading long and well settled. But was it a question of law, or a question of fact, or a mixed question, whether gross negligence existed? If a question of fact, then the averment was the averment of a fact to be proved, and to have alleged the particular circumstances justifying the conclusion might have violated that familiar rule of pleading which forbids alleging the evidence. This rule is, however, to be harmonized with

another, viz., that a general statement of facts, which admits of almost any proof, is bad. 1 Chit. Pl. 232. These rules define two extremes, both of which must be avoided. Regarding the averment as a conclusion of fact and not of law, has the pleader, in this instance, avoided the latter extreme? Is the allegation too general?

The approved forms in the books of precedents seem to justify some generality in the averment of negligence; that is, the particular facts constituting negligence are not alleged. So, among the forms made sufficient by our statute, No. 14 is one for a complaint against the owner of a stage coach for injury to a passenger by the carelessness of the driver, in which the allegation is, "that the stage was upset by the carelessness of the driver, whereby," &c.; from which it may, by liberality of construction, be understood that carelessness in driving was intended to be stated as the cause of the injury. So far as we are aware, all the forms, and certainly every rule of pleading which can be applied to the subject, while dispensing with the necessity of a prolix statement of the particulars constituting negligence, do require that the act which was characterized by negligence shall be stated. What did the plaintiff in this case do, with gross negligence? Or what act did he so omit. The fact that the horse starved to death because he did not feed him, or perished in a swamp into which the plaintiff had driven him, or died because of reckless driving, or any other of the thousand modes by which gross carelessness may destroy an animal's life, without the intervention of any railroad, might be proved to sustain this paragraph of the answer, quite as well as that the horse was blind and had been willingly exposed to collision with railroad trains, passing every hour, as in the case of *Knight* v. *The T. & W. R. R. Co.*, already cited. The pleading is so utterly uncertain and ambiguous, that it cannot be told from it whether the pleader intended to deny the complaint, or to confess and avoid it. If the former, then his proof was admissible under the general denial. If the latter, it should

· have so appeared upon its face, by such allegations as would have shown (the killing of the horse by the cars being admitted) that the gross negligence of the plaintiff produced the fatal result. Even then it might be a question whether the facts would constitute a bar to the action. The question would then be whether gross negligence of the plaintiff, in exposing the horse to injury, is always sufficient to show a willingness or desire that injury may be inflicted. But that question need not now be decided.

The evidence of the plaintiff was not definite as to whether the animal was killed before or after the suit was begun. The animal was killed in the forenoon of the day that the suit was brought, *October* 11, according to one witness, while another thinks he was killed in *September*. It was not put in proof when the suit was commenced. The appellant thinks that a new trial should have been granted because the evidence did not show that the horse was killed before the commencement of the suit. There is nothing whatever in the point. That question was not in issue. *Smith* v. *Holmes*, 19 N. Y. 271.

The appellant attacks the first paragraph of the complaint, because it does not allege that the railroad was not fenced at the place where the animal entered upon it. We need not pass upon the question of the sufficiency of this paragraph. The second paragraph was good, and the evidence was sufficient to support it in this court.

The judgment is affirmed, with ten per cent. damages and costs.

*S. P. Oyler* and *D. W. Howe*, for appellant.

*G. M. Overstreet, A. B. Hunter, D. D. Banta* and *C. Byfield*, for appellee.