## MATLAW CORPORATION v. WAR DAMAGE CORPORATION.

### No. 9379.

Circuit Court of Appeals, Seventh Circuit.

Oct. 29, 1947.

Rehearing Denied Dec. 9, 1947.

James E. Watson and Orin DeM. Walker, both of Washington, D. C., Walter

Myers, Jr., of Indianapolis, Ind., and Jay E. Darlington, of Hammond, Ind., for appellant.

Peyton Ford, Asst. Atty. Gen., Edward H. Hickey, Sp. Asst. to the Atty. Gen., B. Howard Caughran, U. S. Atty., of Indianapolis, Ind., and Richard E. Guggenheim, of Washington, D. C., for appellee.

Before MAJOR and KERNER, Circuit Judges, and LINDLEY, District Judge.

KERNER, Circuit Judge.

By this appeal plaintiff challenges the propriety of the judgment of the District Court dismissing plaintiff's complaint for want of jurisdiction.

Defendant is a corporation, created December 13, 1941, by the Federal Loan Administrator, with the approval of the President of the United States, pursuant to § 5d of the Reconstruction Finance Corporation Act, 15 U.S.C.A. § 606b, for the purpose of providing insurance covering damage to property from enemy attack and military action of the United States forces in resisting attack. Prior to July 1, 1942, the War Damage Corporation provided for such insurance without compensation, but by express Congressional enactment Congress added § 5g to the Reconstruction Finance Corporation Act, 15 U.S.C.A. § 606 b—2, requiring that on and after July 1, 1942, the War Damage Corporation should issue insurance policies upon the payment of annual premiums.

Under the terms of War Damage Corporation's charter an authorized capital stock of $100,000,000 was provided, all of which was subscribed for by the Reconstruction Finance Corporation. On July 1, 1942, defendant began and thereafter carried on the function of insuring the property of all persons applying for such insurance and issued its policies through any insurance carrier specifically appointed by defendant. It prepared a basic standard form of policy in which it agreed to indemnify the insured against physical loss of or damage to the property described in an attached application, resulting from enemy attack and including any action by the Military, Naval or Air Forces of the United States in resisting enemy attack. No-

vember 30, 1942, defendant issued one of these policies to plaintiff on its $80,000 building in Hammond, Indiana, for which plaintiff paid an annual premium of $104 and a second premium of $104 on November 30, 1943.

In its complaint, plaintiff, an Indiana corporation, alleges "that the matter in controversy exceeds, exclusive of interest and costs the sum of $3,000 and arises under the Constitution and laws of the United States," and that as a policy holder of the War Damage Corporation it brought its suit on behalf of itself and for all holders of similar policies.

The complaint further alleges that the total amount of money which defendant collected, and holds, as such "net premiums" exceeds $225,000,000; that the total amount of insurance claims paid out by defendant is approximately $223,000; that all insurance claims against defendant have already been paid, or if any yet remain unsettled, these are less than $100,000; that defendant holds the fund as "trustee for the common pro rata benefit of all said policyholders in proportion to the amount of premiums which they paid into the fund, and that they [policyholders] are equitably entitled to a decree establishing said trust and ordering the pro rata distribution of said trust fund among them."

The complaint further alleges that it [plaintiff] and all other policyholders whose net premiums have gone into the fund constitute a class so numerous as to make it impracticable to bring them all before the court, their number being in excess of 100,000 and their members being located in all parts of the United States.

In the District Court defendant, asserting that plaintiff's individual claim totaled at most only $208, moved to dismiss the complaint on the ground that the court was without jurisdiction and that plaintiff had failed to state a cause of action, in that (1) in defining the functions of the War Damage Corporation in § 5g of the Reconstruction Finance Corporation Act, it was clearly the intention of Congress that the surplus funds should not be distributed to the policyholders, but rather should be retained by the United States, and (2) the War Damage Corporation was a stock insurance corporation and its surplus belongs to the stockholders—the United States. The court sustained the motion on the ground that it lacked jurisdiction. In the view we take of this appeal, the only question to be decided is whether the court lacked jurisdiction.

Original jurisdiction of the district courts, except for special acts conferring jurisdiction, is found in Section 24 of the Judicial Code. 28 U.S.C.A. § 41(1). This section provides that jurisdiction exists "where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and (a) arises under the Constitution or laws of the United States, * * *." Concededly, this case arises under the laws of the United States; nevertheless, in order to sue in the District Court, plaintiff must demonstrate that the amount in controversy exceeds the amount of $3,000.

Plaintiff contends that the question is not whether the amount claimed to be due it is $208, but whether the jurisdictional amount is the $225,000,000 which plaintiff claims defendant collected and holds as net premiums. It makes the point that the class members' rights here involved "do not stem from the contract." It insists that the rights of the class members stem from basic principles of equity, and it argues that this is what is called a true class representative action under Rule 23 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following § 723c,[1] and that the right sought to be

---

[1] "If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character or the right sought to be enforced for or against the class is (1) joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right, and a member of the class thereby becomes entitled to enforce it; (2) several, and the object of the action is the adjudication of claims which do or may affect specific property involved in the action; * * *"

enforced is the common right of the class members, but that if the rights of the class members be considered several, plaintiff is entitled to sue for the class because "the object of the action is the adjudication of claims which affect specific property involved in the action," namely, the fund. In other words, plaintiff asserts it may aggregate the alleged claims of other policyholders. With this contention we cannot agree.

In support of its contention plaintiff relies principally on Boesenberg v. Chicago Title & Trust Co., 7 Cir., 128 F.2d 245, 141 A.L.R. 565; Citizens Banking Co. v. Monticello State Bank, 8 Cir., 143 F.2d 261; Thompson v. Deal, 67 App.D.C. 327, 92 F.2d 478; and Weeks v. Bareco Oil Co., 7 Cir., 125 F.2d 84. Before proceeding to discuss these cases it is well to say that we are not unmindful of the fact that the Supreme Court has shown increasing liberality in recent decisions permitting the class members to aggregate the value of their individual claims to make up the necessary jurisdictional amount required by Section 24 of the Judicial Code. See Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111. But the Supreme Court has never receded from or overruled the familiar rule that when several plaintiffs assert separate and distinct demands in a single suit, the amount involved in each separate controversy must be of the requisite amount to be within the jurisdiction of the district court, and that those amounts cannot be added together to satisfy jurisdictional requirements.

In the Boesenberg v. Chicago Title & Trust Co. case, supra, there was no question of the existence of the trust. The beneficiary in that case sued, not to recover his interest in the trust, but to protect the trust res itself, or as the court at page 246 of 128 F.2d said: " * * * the subject of controversy was not the recovery of plaintiff's interest in the trust fund but the protection, preservation and administration of a trust estate worth far more than $3000, under the well known powers of a court of equity." The Citizens Banking Co. v. Monticello State Bank case, supra, likewise was an action to protect a trust fund. It was brought to restore a trust fund wrongfully dissipated, and to distribute the proceeds to holders of collateral notes secured by a trust indenture.

In Weeks v. Bareco Oil Co., supra, the action was predicated upon injuries allegedly caused by a criminal conspiracy in violation of the anti-trust laws. This court allowed the class action because the common question of fact was the existence or absence of defendants' wrongful conduct. In our case, we fail to see the existence of a common question of law or fact. Each contract was separate and distinct from every other, and as this need not be determinative in itself, it does demonstrate here that each claim is independent of the other. Thompson v. Deal, supra, likewise, may be distinguished. This case arose from the repeal of the Bankhead Cotton Control Act, 48 Stat. 598, and was a suit by certain cotton producers to recover monies paid to government agents under the Act. The money, however, was a private fund and the government agents were mere custodians for private interests. The court held that the suit was in the nature of an action to impress a fund with a trust, because there was an identity of parties as well as an identity of interests.

In our case, no trust exists. There is no trust indenture or instrument defining the duties of a trustee, or the rights of beneficiaries. Here, there is no provision in the policies issued which gives plaintiff or any other policyholder any claim against any surplus of defendant, and plaintiff's right under the policy, if any existed, did not depend upon nor was it related to the right of any other policyholder. The policies provided merely that "In consideration of the payment of the premium, the Corporation agrees to indemnify the Insured." There is no claim that plaintiff did not receive the full benefit of being insured for the entire terms of its policies. These facts, we think, distinguish the cases cited by plaintiff.

In our opinion, in order to achieve the requisite jurisdictional amount by aggregating the claims of the class which plaintiff alleges it represents, a true class action must be demonstrated. A true class action is one in which, but for the class device, the joinder of all interested persons

would be essential. And Rule 23 cannot confer jurisdiction on a federal court by joining numerous plaintiffs for the purpose of aggregating the amount of their separate claims, unless the test of joint liability is met. Fechheimer Bros Co. v. Barnwasser, 6 Cir., 146 F.2d 974. See also Pinel v. Pinel, 240 U.S. 594, 36 S.Ct. 416, 60 L.Ed. 817.

 We conclude that plaintiff's right is an individual right, and that that right is based on his contract, or as the trial judge in his opinion said: "the rights of the plaintiff and those whom it claims to represent are derived from their respective policies; * * * these rights are several, unrelated and independent; * * *." 7 F.R.D. 349, 352. That being so, plaintiff cannot join the rights of others to those of his own so as to create the necessary jurisdictional amount.

This view is supported by case law. See Rogers v. Hennepin County, 239 U.S. 621, 36 S.Ct. 217, 60 L.Ed. 469; Lion Bonding & Surety Co. v. Karatz, 262 U.S. 77, 43 S.Ct. 480, 67 L.Ed. 871; Clark v. Paul Gray, Inc., 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001; Eberhard v. Northwestern Mutual Life Insurance Co., 6 Cir., 241 F. 353; Robbins v. Western Automobile Insurance Co., 7 Cir., 4 F.2d 249, certiorari denied 268 U.S. 698, 45 S.Ct. 515, 69 L.Ed. 1163; Woods v. Thompson, 7 Cir., 14 F.2d 951; Sturgeon v. Great Lakes Steel Corp., 6 Cir., 143 F.2d 819, 821; and Andrews v. Equitable Life Assurance Society, 7 Cir., 124 F.2d 788, certiorari denied 316 U.S. 682, 62 S.Ct. 1270, 86 L.Ed. 1755.

In the Andrews case, supra, this court considered a somewhat similar situation. In that case plaintiff's claim did not equal the necessary jurisdictional amount; the plaintiff, however, asserted that his suit was on behalf of all those similarly situated. The complaint alleged that a surplus fund in excess of the legal reserve had been accumulated by defendant, and that this surplus in equity belonged to all the members who contributed to the same in proportion to their respective contributions, and that by the payment of premiums on the policies plaintiff contributed to this fund.

This court, in that case, in deciding adversely to plaintiff's contention, said at page 790 of 124 F.2d: "In determining whether or not such claims can be aggregated for the purpose of determining the jurisdictional amount, the question to be decided is not whether there is a common fund large enough to meet the test. The question is the nature of the plaintiff's claim in and to that fund. If the claims of the plaintiff and the persons he purports to represent are joint, they may be aggregated to make the jurisdictional amount.

"The size of the fund may then control. But where the claims, as in the case at bar, are several as against the fund, then the claims cannot be aggregated to make the jurisdictional amount."

We think that what this court said in the Andrews case is applicable here. For the reasons set forth in this opinion, the judgment of the District Court is

Affirmed.