MATLAW CORPORATION *v.* WAR DAMAGE CORPORATION

[No. 18,315.   Filed May 8, 1953.   Petition for Rehearing
dismissed June 12, 1953.]

594

*Jay E. Darlington,* of Hammond and *Walter Myers, Jr.* of Indianapolis, for appellant.

*Holmes Baldridge,* Assistant Attorney General of the United States and *Marshall E. Hanley,* United States Attorney for the Southern District of Indiana, for appellee.

CRUMPACKER, J.—The appellant filed a complaint in the Marion Superior Court making the appellee War Damage Corporation, a subsidiary of and wholly owned

by the Reconstruction Finance Corporation, the sole party defendant. A series of four separate summonses were issued on this complaint and each was returned to the court in due course with the facts concerning service endorsed thereon by the sheriff of Marion County through his duly appointed, qualified and acting deputy. Thereafter on April 1, 1948, the appellant appeared in said court, moved for and obtained the following order:

"And the Court being duly advised in the premises now orders the clerk to issue alias summons against the War Damage Corporation, the defendant herein, to be served upon its fiduciary agents, the Grain Dealers National Mutual Fire Insurance Company, and the Connecticut Fire Insurance Company, which said summons shall be returnable on the 14th day of April, 1949."

On the same day and in compliance with said order an alias summons was issued to the sheriff of Marion County commanding him to summon the appellee to appear in said court on April 14, 1949, by service upon its "fiduciary agents" Connecticut Fire Insurance Company and Grain Dealers National Mutual Fire Insurance Company. The sheriff made return thereon reciting facts showing service as directed. Sec. 2-1905, Burns' 1946 Replacement, has this to say concerning alias summonses:

". . .; and if, at any time after the filing of the complaint *it shall be found that any party to the action has not been properly notified,* the plaintiff may file with the clerk or indorse on the complaint, a written request for such notice to be given, and while the court is in session by obtaining an order that such notice be given, naming therein the day on which such party is required to appear to the action, and summons shall be issued or publication made accordingly, in the proper case, as above provided; . . . ."

From the fact that on April 1, 1948, the court ordered an alias summons, we must assume that it found that the appellee had "not been properly notified" by any of the previous summonses and the service thereof. Such finding, right or wrong, was urged upon the court by the appellant and we therefore give said previous summonses and the returns thereon no further consideration.

The appellee, evidently concluding that the court had not yet acquired jurisdiction over its person, appeared specially and on April 10, 1948, and on April 24, 1948, filed almost identical motions to quash all summonses theretofore issued and set aside the service thereof and also filed, on said dates, similar pleas in abatement each of which was accompanied by an unattached and unverified instrument entitled "Memorandum in support of plea in abatement and motion to quash summonses and set aside service thereof." Why the April 24 set of these pleadings were filed is not apparent from the record although the memorandum filed on that day alleges some additional matters not appearing in the prior memorandum. Each of these pleas in abatement and each of said motions to quash were attacked by separate demurrers for insufficient facts.

This practice is strange to us and we know of no provision of our code that permits two separate and distinct pleas in abatement to be addressed simultaneously to the same complaint or two separate and distinct motions to quash the same summons. Neither can a demurrer be directed to a motion. It has been held that such practice is "wholly without warrant in our system of jurisprudence." *Bonfoy* v. *Goar* (1895), 140 Ind. 292, 39 N. E. 56; *Sidener, Administrator* v. *Coons, Administrator* (1892), 83 Ind. 183. Nevertheless the court saw fit to entertain both motions

to quash, both pleas in abatement and the four demurrers thereto and, after being duly advised, overruled all of said demurrers and ordered the appellant to answer both pleas in abatement and respond to both motions to quash. This the appellant refused to do but on the contrary elected to stand on its demurrers and thereupon the court entered judgment that this action abate and that all summonses be quashed and service thereof be set aside. From this judgment the appellant appeals challenging the court's ruling on its said demurrers.

Our practice contemplates that a motion to quash a summons or return challenges any defect that appears on the face of the summons or return and should clearly indicate the defects complained of. Flanagan, *Indiana Pleading and Procedure* 148, §88; *Donnelley* v. *Thorne* (1944), 114 Ind. App. 468, 51 N. E. 873; *Jeffersonville, Madison & Indianapolis Railroad Company* v. *Dunlap* (1868), 29 Ind. 426. Defects which do not appear on the face of the summons or return are reached by a plea in abatement in which the facts constituting such defects must be alleged. Flanagan, *Indiana Pleading and Procedure* 149, §88; *Donnelley* v. *Thorne, supra; Workingmen's Mut. etc., Assn.* v. *Swanson* (1909), 43 Ind. App. 379, 87 N. E. 668. The appellee chose not to follow this orthodox practice. Its first motion to quash, which seems to be directed to all summonses theretofore issued and the returns thereon, contains nothing but the mere legal conclusion that "no effective service has been obtained on said defendant." It utterly fails to set out the defects, appearing on the face of said summonses or returns, it seeks to challenge. The second motion to quash is directed specifically to the alias summons and contains nothing more than a statement that the service of said

summons "does not constitute service on the defendant War Damage Corporation nor has any other effective service been had upon said defendant." Again there is no indication as to what are the defects, appearing on the face of the summons or return, to which the appellee objects. The memorandum in support of these motions are of no assistance as they concern themselves with matters that should have been pleaded in abatement.

Notwithstanding all this it is difficult for us to understand how error can be predicated upon the overruling of the demurrers to the two motions. As stated above demurrers to such motions were not proper in the first instance and should have been stricken from the files. They were allowed to stand and were overruled which, perhaps, accomplished the same purpose. This left the motions to quash undisposed of and, as they point out no defects that appear on the face of the summonses and returns to which they were directed, they should have been overruled.

We now come to a consideration of the two pleas in abatement and the demurrers thereto. As heretofore stated, if the appellee is in court it is by virtue of the alias summons and the service thereof. All others went out of the record when the court found them insufficient and on that ground ordered the issuance of the alias summons. It is our opinion that there is no authority in our practice for two separate and distinct pleas, simultaneously on file, to abate the same action for the same reasons. The last one filed was not offered as amendatory of the first nor does it comply with the requisites of a supplemental pleading. We are constrained to hold that when it was filed it became a substitute for the first plea and that its effect was to withdraw the same. Our discussion will therefore be confined to the plea in abatement and the memo-

randum in support thereof, filed April 24, 1948, as they pertain to the alias summons and its service. Omitting caption, signature and oath, said plea reads as follows:

"Comes now B. Howard Caughran, United States Attorney, by special appearance for the defendant War Damage Corporation, and asks the Court that this action abate as to said defendant for the following reasons and upon the following grounds:

"This Court has not acquired jurisdiction over the War Damage Corporation as defendant in this cause since no proper, valid, or legal service has been made on said defendant."

It will be noted that this plea makes no mention of the unattached memorandum which accompanied it nor does it by reference make the same a part thereof. As far as the record discloses the memorandum was merely filed simultaneously with the plea in abatement and offered as an unsworn statement of fact in support of such plea which, in itself, alleged no facts tending to abate the action. As a controversy is waged over whether or not such memorandum is a part of the plea in abatement we set it out as follows:

"In support of Plea in Abatement and Motion to Quash Summonses and Set Aside Service of Process, both of which are filed simultaneously herewith, and by way of supplement to the Memorandum filed in support of similar pleadings filed by the undersigned by special appearance for the defendant War Damage Corporation on April 10, 1948, the undersigned would respectfully state to the Court that the attempt to acquire jurisdiction over the War Damage Corporation by serving E. H. Richardson, as state agent of Connecticut Fire Insurance Company and by serving Otis N. Earl, vice president and secretary of Grain Dealers National Mutual Fire Insurance Company, is not effective and has not brought the said defendant War Damage Corporation under the jurisdiction of this Court as a defendant in this cause.

"Although described as 'fiduciary agents' neither the Connecticut Fire Insurance Company nor the Grain Dealers National Mutual Fire Insurance Company had any authority to accept service of process for the defendant at the time of said attempted service.

"The defendant War Damage Corporation is a foreign corporation, and at the time of said purported service it was 'not found' in the territorial jurisdiction of this Court. The defendant is not doing business, nor had it at any time since February 9, 1948, done any business in Marion County, Indiana, or in the State of Indiana. Moreover, during the same period, as the undersigned is reliably informed and therefor believes, the defendant corporation since February 9, 1948 has not owned or possessed, nor does it now own or possess, any property in Marion County, Indiana, or the State of Indiana.

"Neither was the Connecticut Fire Insurance Company nor the Grain Dealers National Mutual Fire Insurance Company at any time a general agent or a statutory agent authorized to receive process for the defendant corporation but was only a special agent for a special purpose, which special purpose and special agency totally ceased and terminated as to the Connecticut Fire Insurance Company on February 9, 1948, and as to the Grain Dealers National Mutual Fire Insurance Company on or about December 31, 1947, and since said respective dates said Connecticut Fire Insurance Company and said Grain Dealers National Mutual Fire Insurance Company have not been agents of the defendant corporation in any respect. Therefore at the time of the attempted and purported service of process in this case on the Connecticut Fire Insurance Company and the Grain Dealers National Mutual Fire Insurance Company, said corporations were not agents for the defendant corporation of any kind whatsoever, and therefore the attempt to serve the defendant by serving summons on said Connecticut Fire Insurance Company and on said Grain Dealers National Mutual Fire Insurance Company through their respective officers was

wholly ineffective to acquire jurisdiction over the defendant War Damage Corporation.

"Wherefore, the undersigned respectfully submits that this action should abate as to the defendant War Damage Corporation."

The appellant's demurrer to the above plea in abatement is for insufficient facts (1) because it appears from the record that the defendant has taken steps and filed pleadings and papers in the case which constitutes a general appearance under Indiana law and practice; and (2) because the plea fails to make any proper or sufficient showing in fact or law to meet the requirements of a plea in abatement attacking the court's jursidiction over the defendant. It seems clear to us that unless the memorandum in support of the appellee's plea in abatement is considered a part thereof the appellant's demurrer should have been sustained on its second specification. The only reason urged for the abatement of the action is to the effect that the court has not acquired jurisdiction over the person of the defendant because *no proper, valid or legal service* has been had on it. This plea was filed in the face of a record showing an alias summons directed to the appellee and a return thereon reciting the manner in which it was served. The appellee's characterization of such service as not proper, valid or legal is a pure conclusion of law and as the plea contains nothing else it must be considered insufficient to abate the action. *Dodgem Corp.* v. *D. D. Murphy Shows, Inc.* (1933), 96 Ind. App. 325, 183 N. E. 699; *Levy* v. *State ex rel.* (1928), 86 Ind. App. 666, 152 N. E. 873; *Kempton Hotel Co.* v. *Ricketts* (1921), 76 Ind. App. 458, 132 N. E. 303.

The appellee insists however that the memorandum above set out must be considered as a part of the plea

and, when so taken, ample facts are pleaded to abate the action for lack of jurisdiction over its person. We are inclined to believe that when the appellant filed its demurrer it also considered the memorandum to be a part of the plea in abatement. A demurrer goes only to defects appearing on the face of the plea and certainly, unless the memorandum is brought into it, no facts showing a general appearance would appear on its face as alleged in the first specification of said demurrer. The appellee states that it adopted the practice which obtains when a demurrer is filed on the ground that the pleading to which it is addressed is insufficient for want of facts. In such event the demurrer merely states the general or conclusory ground for demurrer, to-wit, the pleading is insufficient for want of facts, and the necessary averments specifying the defects are contained in an accompanying memorandum. We cannot however permit the attitude of counsel to lead us into the approval of a procedure, however logical it may seem, that is not sanctioned by the code or by a rule of the Supreme Court and as far as we can discover there is no warrant in Indiana practice for pleading matters in abatement in the manner of a demurrer for want of facts nor is there judicial precedent for such practice in our decisions. It is our opinion that the memorandum in controversy cannot be read into the plea in abatement and thus supply facts concerning which the plea is deficient.

The appellee says that notwithstanding all that has been said "matters of which judicial notice is taken need not be stated in a pleading." Sec. 2-1046 Burns' 1946 Replacement. That the Acts of Congress are the laws of all the states and we therefore have judicial knowledge of them. That by

act of Congress the appellee's charter was made a part of the permanent federal regulations (7 Fed. Register 2531) and therefore we know that it expired January 22, 1947, and that the appellee had no succession thereafter except for purposes of liquidation. That on June 30, 1947, Congress withdrew the Reconstruction Finance Corporation's authority to advance more funds to the appellee and on July 30, 1947, directed the appellee to pay to the Treasury of the United States $210,751,618.65 *of* the amount realized by it through its operations and that such sum should be applied to the reduction of the national debt. We concede that we are required to take judicial notice of these facts, *The State, ex rel. Schumacher, Auditor* v. *Gramelspacher* (1891), 126 Ind. 398, 26 N. E. 81, but even when we read them into the plea in abatement we fail to see how they foreclose the possibility of the appellee being still in the process of liquidation; still subject to suit in furtherance of that purpose and also, to that end, the possibility of its maintaining an agent in Indiana, other than those mentioned in the memorandum, with authority to accept service or appear voluntarily.

The appellant insists that in the event judgment is reversed the cause should be remanded with a mandate that the court order the appellee to plead to the merits because it has come into court with a flagrantly insufficient plea in abatement and thereby frivolously caused long delay. We do not believe that this is a question for us to decide. If and when the appellee seeks to plead over, the trial court will decide upon its right to do so.

Judgment is reversed and cause remanded with instructions to overrule the appellee's motion to quash the alias summons and sustain the appellant's demur-

rer to the second plea in abatement and for further proceedings consistent with this opinion.

Royse, C. J., dissents with opinion.

## DISSENTING OPINION

ROYSE, C. J.— (Dissenting opinion)—I cannot agree with the conclusion of the majority in this case. I am in general agreement with their views on the question of pleas in abatement and, under other circumstances, believe their conclusion would be correct. However, for the reasons hereinafter stated, I believe the appeal should be dismissed because the action which appellant commenced is moot.

The complaint herein was filed in the Superior Court of Marion County March 30, 1948. On June 10, 1941, congress enacted a statute authorizing the Reconstruction Finance Corporation, when requested by the Federal Loan Administrator, with the approval of the President, to create a corporation, *inter alia*, to take such action as the President and the Federal Loan Administrator may deem necessary to expedite the national-defense program (55 Stat. 248, 249). Pursuant to this grant of authority, the Reconstruction Finance Corporation created appellee on December 13, 1941, to insure property against war damage, and defendant's charter was made a part of the permanent federal regulations (Code of Federal Regulations, Cum. Supp., pp. 3819-20 (1st ed.) ; see also, 7 Federal Register 2531). On March 27, 1942, Congress enacted a statute directing the Reconstruction Finance Corporation to continue to supply funds to defendant but in an amount not to exceed one billion dollars (56 Stat. 174, 175).

Both the Act of June, 1941 (55 Stat. 248, 250), authorizing appellee's creation, and its charter expressly

provide that it "shall (not) have succession beyond January 22, 1947, except for purposes of liquidation, unless . . . (appellee) is extended beyond such date pursuant to an Act of Congress." Congress has passed no act extending the life of appellee beyond January 22, 1947. In fact, on June 30, 1947, Congress repealed the Act of March 27, 1942, authorizing the Reconstruction Finance Corporation to supply funds to appellee (61 Stat. 202, 209).

Finally, on July 30, 1947, Congress enacted the following law in reference to appellee:

> "War Damage Corporation: The Board of Directors of the Corporation shall pay or cause to be paid to the Treasury of the United States $210,751,618.-65 of the amount realized by the Corporation from its operations, such sum to be covered into the Treasury immediately upon the approval of this Act and applied to reduction of the national debt." 61 Stat. 574, 579.

Appellee in its brief in this court correctly asserts that we must take judicial knowledge of these Acts of Congress and the Code of Federal Regulations. It then asserts they show when this action was commenced (1) appellee was not doing business in Indiana, (2) it owned no property here, and (3) in fact had completely ceased to exist.

Appellant in its reply brief concedes that if appellee has ceased to exist its action against it should be dismissed. But appellant contends that the above referred-to statutes do not show appellee has ceased to exist because the statute creating it and its charter provided it shall not have succession beyond January 22, 1947, except for purposes of liquidation, unless it is extended beyond such date pursuant to an Act of Congress. In support of this contention it cites the fact that appellee

appeared through the United States District Attorney in litigation of the same character after it had allegedly ceased to exist and there was no reference to that fact in those cases. They are: *Matlaw Corporation* v. *War Damage Corporation* (May, 1947), (D. C. S. D. of Ind.) 7 F. R. D. 349; (7th Cir.) (Oct. 1947) 164 F. 2d 281 (Certiorari Denied), 333 U. S. 863; *Knowles* v. *War Damage Corporation* (Oct. 1948), (C. A. D. C.) 171 Fed. 2d 15 (Certiorari Denied) (1949) 336 U. S. 914. From the reported opinions it is not possible to determine when these actions were commenced. It is apparent from reading these opinions the question here under consideration was not presented to the Federal Courts in those cases. I do not believe the appearance of a United States District Attorney or of the Attorney General of the United States on behalf of a Federal agency whose existence had expired by operation of law could recreate life in such agency, nor could the failure to present such a question to the court have such effect.

It is to be assumed that a government agency or corporation will obey the law. Congress did not extend the life of appellee beyond January 22, 1947. Therefore it must be presumed that appellee proceeded on that date to liquidate its affairs. Congress determined it needed no more funds after June 30, 1947 and repealed the Act authorizing the Reconstruction Finance Corporation to supply it funds—this was more than six months after its existence ended except for liquidation. By the Act of Congress of July 30, 1947, *supra,* appellee was directed to pay to the Treasury of the United States $210,751,618.65. The minute particularity of this sum is significant. It indicates to me that Congress by this Act completed the liquidation of appellee.

It is well settled by the authorities in this jurisdiction that to give appellate jurisdiction there must be a

real controversy which can give to one of the parties some valuable or tangible relief. Flanagan, Wiltrout & Hamilton, Indiana Trial and Appellate Practice, Vol. II, pp. 13, 14, §2129, Subdivisions C, H and I; *State ex rel. Murchie* v. *Bath, Secretary of State et al.* (1949), 227 Ind. 481, 86 N. E. 2d 680; *Bell* v. *Buescher Band Instrument Company et al.* (1930), 202 Ind. 12, 171 N. E. 377; *State ex rel. Bryant v. Jackson, Secretary of State* (1922), 192 Ind. 497, 137 N. E. 51; *Levsey et al.* v. *City of Evansville, et al.* (1951), 121 Ind. App. 666, 101 N. E. 2d 196.

I am of the opinion appellee had ceased to exist as an entity by operation of law long before this litigation was commenced. Therefore the appeal should be dismissed and an end put to this litigation. It does not necessarily follow that if there be any merit in appellant's complaint it might not, in a proper action, pursue the fund. However, it is significant that logical and persuasive dicta in the case of *Knowles* v. *War Damage Corporation, supra,* pp. 19, 20, has apparently ended actions of this kind against appellee in the Federal Courts.

## ON PETITION FOR REHEARING

PER CURIAM.—The appellee's petition for a rehearing of this appeal was filed on the last day permissible under the rules. On the same day a copy thereof was mailed to counsel for the appellant and received by him the following day. Rule 2-13 provides:

> "*Within the time* allowed for *filing* motions and *petitions,* and briefs in support thereof, *copies shall be served* upon the parties affected, or their attorneys of record, and proof of such service shall be

made at the time of filing or promptly thereafter. (Our emphasis)."

This rule has been held to apply to petitions for rehearings and a failure to comply therewith requires a dismissal of the petition. *Norling* v. *Bailey* (1951), 121 Ind. App. 457, 98 N. E. 2d 513, 99 N. E. 2d 439.

Concerning an appellant's brief we have held that the mailing of a copy thereof to opposing counsel on the last day for filing the same is not a compliance with Rule 2-13 unless it was received by him on the same day it was mailed. *Wright* v. *Hines* (1945), 116 Ind. App. 150, 62 N. E. 2d 884; *Hoover* v. *Shaffer* (1948), 118 Ind. App. 399, 80 N. E. 569. No distinction between a brief and a petition for a rehearing can be drawn as the time for serving a copy of either upon the opposing party or his attorney is governed by the same rule.

The petition for a rehearing is dismissed.

NOTE.—Reported in 112 N. E. 2d 233.

Rehearing denied 112 N. E. 2d 868.