Mr Chief' Justice Marshall
 

 delivered the opinion of the Court.
 

 This is a writ of error from a judgment óf the district court of the United States for the district of Louisiana, rendered on the- petition of the United States against Seaman Field and others, the plaintiffs in error, as syndics or assignees of Lewis E‘. Brown, an insolvent debtor. . The petition states, that Lewis E. Brown, being indebted to the United States on a certain bond, on which judgment had been obtained for a sum staled in the .petition, became insolvent on or about the 20th of April 1830, and made a voluntary assignment of all his property to his creditors, under the laws of Louisiana; and that the original defendants were'appointed syndics or assignees of the creditors; and had received and taken possession of all the property' of Brown, and sold and disposed of the same to an amount far exceeding the debt due to the United
 
 States;
 
 that tiie defendants, at the time of their receiving :and taking possession of the property-aforesaid, well knew of the' existence o.f the debt due to the United States ; and though the same had been demanded of them, refused to pay it. Several other suits, of a similar nature, were brought for other debts, upon bonds due to the United States by Lewis E. Brown, which were afterwards consolidated with the present sujt. Answers were duly put in' by the defendants, which admitted the assignment, but denied that the syndics then had funds applicable to the .debt. The cause, was finally submitted to t.he court upon a statement of facts (which is in'lhe case) prepared by the parties ; the trial by jury being waived by their consent..
 

 From this statement of facts it appears, that Lewis E. Brown, at the'time of his failure and insolvency, on the 26th of May 1830, was surety for one John Brown, on certain custom house bonds, for duties, due at various times between the 26th of August 1830 and the 9th of January 1831; upon all of which , bonds judgments were rendered in favour of the United States, before the coipmencement of the present suit, which was in March 1831. On these judgments writs of fieri facias issued against all the parties,. which were returned by the
 
 *200
 
 marshal-nulla bona ; and none of them have as yet been paid. John Brown failed and became insolvent; and applied for the benefit of the insolvent' act of Louisiana, on tire 10th of June 1830.
 

 The defendants made sale of Lewis E. Brown’s property, on a-credit of one, two and three years ; and received promissory notes therefor. A part of these notes were paid before the 3d of December l'S31; and the residue was secured by mortgage on the property, and amounted to 24,898 dollars and 60 cents, one half of which fell due on.the 31st of July 1S32, and the other .half on the 31st of July 1833. The United States never, in any manner, appeared in the proceedings had in the parish court, under the laws of Louisiana; in relation to the insolvency of Lewis E. Brown. At the time. of his failure, there were certain mortgages and privileged debts on his estate. A part of these, as well .as some other debts, had been paid by the assignees, and were stated in the tableau of distribution; which was rendered to and confirmed by the parish court, on the 15th of December 1831, upon due proceedings had thereon. On the 30th of December 1830, the marshal, acting under the writs of fieri facias on several of the judgments against Lewis E. Brown, seized the funds in the possession of the defendants as syndics, and gave notice to them of the seizure thereof to satisfy these judgments respectively. At the hearing, of the cause, the court admitted certain evidence to prove that the marshal made a seizure, and gave notice to the. defendants that he had seized any funds in their hands to satisfy the judgment on which the present petition was founded; and an exception, by a bill of exceptions, was taken to such admission. And upon the final hearing, in February 1833, the court gave judgment for the United States, for the amount of all the bonds and the interest due thereon and costs.
 

 The claim of the United States to the- payment of the debts due to them out of the funds in the hands of the syndics, is founded upon the priority given them by the sixty-fifth section of the duty collection act of 1799, cli. 128; which, in cases of a general insolvency and assignment, like the present, provides that the debts of the United States shall be first satisfied out of the funds in the hands of the assignees.
 

 The first objection now taken by the plaintiffs in error, is,
 
 *201
 
 that'the order of the parish court, confirming the tableau of distribution, was the judgment of a court of competent jurisdiction, in favour of each creditor whose debt was therein stated; and that the syndics were obliged to. pay the proceeds of the sale to such creditors'; and the United States, not' being named as creditors therein, can have no right to the fund against the other creditors. If at the time of the confirmation of this tableau of distribution,’ no debts due to the United States had been known to the syndics, and they had, in ignorance thereof, made a distribution of the wholefunds among theother creditors; thatmight have raised a very different question. But in point of fact, it has not been denied that the syndics, long before that period, had ■notice of the existence of the debts due to the United States; and the present suit was commenced against.them in the preceding March. The United States were, it is true, not parties to the proceedings in the parish court, nor were/they bound to appear and become parties therein. The local laws of the state could not, and did not bind them in their rights. They could not create a priority in favour of other creditors- in cases of insol- ■ vency, which should supersede that of the United States. The priority of the latter attached by the laws of the United States, in virtue of the assignment and notice to the syndics of their debts. And it was .the duty of the syndics to have made known those debts in their tableau of distribution, as having such priority. There is no doubt that the mortgages upon particular estates sold, must be first paid out of the proceeds of the sales of those estates. But if there be any deficiency of the proceeds of any particular estate, to pay the' mortgages thereon; the mortgagees thereof cannot come in upon the funds and proceeds of the sales of the other estates, except as general creditors. The district judge was perfectly correct iii the views taken by him in his opinion on this subject.
 

 It appears from the papers in the record that the whole amount of the proceeds of all the sales exceeds 40,000 dollars, and that the mortgages are about 27,000 dollars; and making allowance for other- privileged claims, if any, there will remain a balance in the hands of the syndics (when all the notes for the sales are paid) more than sufficient to pay all the debts due to the United States. But the difficulty is, that the notes for a large'amount of their proceeds, viz. 24,898
 
 *202
 
 dollars 60 cents, did not become due until July 1832, and July 1833 (a moiety in each year); the first being after the present suit was commenced, and the latter after the present judgment was rendered. Now the syndics are certainly not liable to the United States for the debts due to' them, unless funds have actually come to their hands. The notes for the sales may all be good, but as one moiety thereof was not paid at the time of the judgment, it does not judicially appear that, even at that time, they had funds out of which the United States were entitled, to judgments. If the remaining moiety of . the notes has been since paid, the United States will then have a legal claim thereon for their debts. For this reason, the judgment of the district court must be reversed; and the cause sent back for further proceedings.
 

 In regard to the bill of exceptions, as the cause was by consent not tried by a jury, the exception to the.admission Of evidence was not properly the'subject of a bill of exceptions. But if the district court improperly admitted ihé evidence, the only effect would-bé, that this court would reject that evidence,
 

 . and proceed to decide the cause, as if it were not in. the record-It would not, however, of itself, constitute any- ground for a reversal. of the judgment. But we are of opinion that the evidence was properly admissible as proof positive to the syn-dics of the debts due to. the United States; and if the fact was material-to enable the court to render suitable judgment'on the statement, of the parties, it is not easy to perceive why it should, have been objectionable. . Without -this evidence, there seems to.be enough in the.record to shew that the syndics had full notice of the debts~'due to the United States. • They do not even set.up in'their.answers any want of notice, as a defence. • But in the present state of the case, this matter is the less important because they ndw have the most ample notice of the debts due to the United States; and these will, at all events, be payable out of the residue of the sale? when it is received.
 

 With the question of costs this court has nothing to do; and as the judgment is reversed for another pause, it becomes immaterial to be considered.
 

 This cause came on to be heard on the transcript of the re
 
 *203
 
 cord fiom the district court of the United States for the eastern district of Louisiana, and was argued by counsel; on consideration whereof, it is ordered and adjudged by this court, that the judgment of the said district court in this cause be, and the same is hereby reversed, and that this cause be,, and the •same is hereby remanded to the said district court for further proceedings-to be had therein, according'to law and justice, and in conformity to the opinion of this court.
 

 [This case wás decided on the 2lst of February 1834.]