Wells *v.* Bower *et al.*

No. 14,579.

WELLS *v.* BOWER ET AL.

JUDGMENT.—*Assignment of by County Commissioners.*—*Sale on Execution.*— *Attack by Third Parties upon.*—Where the board of commissioners held a valid judgment which was a lien upon real estate and attempted to assign it, and an execution was issued upon it and the real estate of the judgment defendant sold, the purchaser paying the full amount of the judgment, third parties can not contest the validity of the assignment and the execution and sale on the judgment on the ground of insufficiency of the notice of the sale and transfer by the commissioners.

SAME.—*Sale on Execution After Expiration of Ten Years from Date of Judgment.*—*To What Liens Title is Subject.*—Where a sale of land is made on execution after the expiration of ten years from the time the judgment was obtained upon which the execution issued, the purchaser takes title subject to all liens upon the land at the date of the levy of the execution. The issuing and levy of an execution before the lien of the judgment upon which the execution issued expires, will not.operate to prolong the lien of the judgment beyond the time limited.

From the Jackson Circuit Court.

*W. K. Marshall* and *L. F. Branaman,* for appellant.

*R. Applewhite* and *B. H. Burrell,* for appellees.

OLDS, J.—This is an action brought by the appellees against the appellant to quiet the title to certain real estate. The question presented arises on the overruling of a demurrer by the appellant to the complaint. As appears by the averments of the complaint one Thomas J. H. Bower was the owner of the real estate in controversy, situate in Jackson county. On the 25th day of April, 1876, one Josiah Cobbs recovered a judgment in the Jackson Circuit Court for the sum of $92 and costs against said Thomas J. H. Bower and Simeon Stockdell. Afterwards, on the 11th day of February, 1884, Cobbs sold and duly assigned the judgment to Daniel W. Bower. On the 13th day of April, 1886, the assignee of said judgment caused an execution to be issued on said judgment and to be delivered to the sheriff of said county, and on the 15th day of April, 1886, the sheriff duly levied said execution on said real estate, and having first duly advertised the same, sold the same on the

15th day of May, 1886, to the appellees at and for the sum of $264.47, and the same not having been redeemed on the 15th day of May, 1887, the sheriff executed a deed for said real estate so sold to the appellees.

It is further averred in the complaint that on the 12th day of December, 1877, the board of commissioners of said Jackson county recovered a judgment in the Jackson Circuit Court against said Thomas J. H. Bower and one Calvin B. Williams for the sum of $315 and costs; that on the 9th day of June, 1887, the members of the board of commissioners attempted to sell and assign said judgment to the appellant, James C. Wells, by an endorsement on said judgment, but that no notice was given of the time and place of the sale of said judgment, nor did the members of said board enter of record their action, nor did they assign said judgment as a board of commissioners; that after said pretended sale the said appellant caused an execution to issue on said judgment and to be delivered to the sheriff of said county, which execution said sheriff duly levied upon said real estate, and having duly advertised the same he sold the same on the 6th day of August, 1887, to the appellant for the sum of $310. It is averred that at said sale the appellees gave notice to all bidders that said proposed sale was irregular and would be void. '

Two questions are presented and discussed by counsel, and, stating them in the order discussed, they are:

*First.* Whether the sale on the execution issued on the Cobbs judgment relates back to the date of the rendition of the judgment so that the purchaser took title by virtue of the judgment lien, or whether, ten years having expired prior to the sale on the execution, the purchaser took title subject to all liens upon the land at the date of the levy of the execution.

*Second.* Did the appellee derive any rights or title under the sale on the judgment rendered in favor of the board of commissioners?

We may properly first consider the question last stated, since, if the appellant derived no title, or rights, by virtue of the assignment to him of the judgment in favor of the board of commissioners, and the sale thereafter on execution issued on said judgment, then title may be quieted against him, and it is unnecessary to consider the question as to whether the appellees' title relates to the date of the levy or the date of the judgment.

It is contended by counsel for the appellees that as the statute provides that " the board of commissioners shall not be authorized to sell any county property, either real or personal, except at public auction, after advertising said property for sale sixty days," etc. (section 4248, R. S. 1881), the attempted sale and transfer are absolutely void, and that the execution was issued without authority, and hence the sale was also void.

The facts, as alleged in the complaint, show that the board of commissioners recovered a valid judgment against the owner of the real estate in the circuit court of the county wherein it was situated ; that the board of commissioners attempted to sell and assign the same to the appellant. It does not appear but that the appellant paid to the board the full amount of the judgment ; that an execution was duly issued upon the judgment and delivered to the sheriff of the county, and he levied upon and advertised and sold the land, and the appellant became the purchaser.

The appellees base their contention that the sale was void and passed no title to the appellant, on the grounds that the judgment is personal property, and that the board of commissioners had no authority to sell without first having given notice. We do not concede that it is necessary to give notice of such sale ; but if it be true that the commissioners could only sell and transfer the legal title to the judgment by having first given notice in accordance with the statute, yet it does not, by any means, follow that the execution and sale thereon were void, and passed no title.

As a rule, judgment plaintiffs have the right to control the issuing of executions upon judgments in their favor; but if execution be issued by the clerk without the authority of the judgment plaintiff, and if he ratify it the execution becomes as valid and binding as if issued by his authority.

In 1 Freeman Executions (2d ed.), section 21, it is said: "Doubtless the ratification may be inferred from very slight circumstances, when the knowledge of the existence of the writ is brought home to plaintiff. Nevertheless, it may happen without any fault or neglect on the part of the plaintiff, that the writ is issued and executed without his knowledge, and to his prejudice. In such case, either he or the purchaser at the execution sale must suffer loss; and so far as the question has been considered, it has been held, and perhaps wisely, that the loss, if any, falls on him, and that the purchaser, if he acted in good faith, takes title although the sale was without plaintiff's knowledge, and realized a sum less than the value of the property, and insufficient to satisfy the writ."

In the case of *Johnson* v. *Murray,* 112 Ind. 154, it is held that the improvident issuing of a writ does not render it void, and the court says: "If the writ is not void it must be attacked directly, and not collaterally; at all events it must be attacked prior to the acquisition of title by sale made under it." In the same case the court further says: "The true and just rule is that recognized by the text-writers and by our decisions, and that is, where there is a mere improvident issue of the writ there must be a motion to quash it, or some such direct attack, and that a suit to quiet title after the sale has been perfected will be unavailing." But, indeed, in this case it is not so much as shown that the writ was improvidently issued. It is not shown to have been issued without the consent of the commissioners. It is shown that they made an attempt to assign the judgment, which, if legally done, would have given the assignee the right to have controlled the writ. Neither the board of

commissioners nor any person with authority from them is questioning the legality of the writ or sale. The question as presented by the facts shows that the board of commissioners had a valid judgment, which was a lien upon the real estate of Thomas J. H. Bower, and the commissioners attempted to assign it, and an execution was issued upon it and the real estate of the judgment defendant sold to satisfy the judgment and the appellant became the purchaser for about the full amount of the judgment, and the board of commissioners are making no question about the improvident issuing of the execution or the legality of the sale, and for aught that appears they had full knowledge of its issuance and of the sale, and have received full payment of their judgment. Certainly, under these circumstances, the appellees are in no condition to contest the validity of the sale and the appellant derived title to the land by such sale and purchase. It remains then to determine the effect of the sale on the execution on the Cobbs judgment after the expiration of ten years from the rendition thereof. By section 608, R. S. 1881, it is provided that "All final judgments in the Supreme and circuit courts for the recovery of money or costs shall be a lien upon real estate and chattels real, liable to execution in the county where judgment is rendered, for the space of ten years after the rendition thereof, and no longer, exclusive of the time during which the party may be restrained from proceeding thereon by any appeal or injunction, or by the death of the defendant, or by agreement of the parties entered of record."

This identical question was considered and passed upon in the case of *Jenkins* v. *Newman*, 122 Ind. 99. In that case a judgment was rendered on March 4th, 1871, and execution issued on the judgment March 3d, 1881. In speaking of the sale made on such execution, at pp. 107, 108, it is said : " The judgment rendered in favor of Ferris by virtue of the statute was made a lien on the land of the judgment debtor, Alexander Jenkins, for the period of ten years from the date

of the rendition of such judgment; at the expiration of ten years that lien expired, and can not be extended by the issuing and levy of an execution, and the judgment lien expired before the sale made by virtue of the execution issued upon the judgment. So that no title passed by such sale by reason of any judgment lien."

This, we think, must be the correct construction to be given to this statute. It expressly provides that the judgment shall be a lièn for ten years, and no longer, except in certain cases, and none of the exceptions are applicable in this case.

If a party desires to derive the benefit of his judgment lien he must enforce it during its lifetime, and if he fails to do so he derives no benefit of the lien, and unless the judgment plaintiff's right to enforce his lien is suspended on account of some of the reasons stated in the section the lien expires at the end of ten years, and he obtains no title by virtue of the lien through a sale made after that date. The conclusion we have reached is in harmony with authority. See Freeman Judgments (3d ed.), section 392. It is said: "The lien of judgments being generally created and limited by statutes prescribing the period of its duration, is, for the most part, kept strictly within the bounds thus assigned to it. The object of a *scire facias* is not to extend or to continue the lien, but to enable plaintiff to make it available by execution. Therefore, if the law provide that judgment liens shall continue for a number of years, but that execution can issue only within a shorter period, it may be necessary for the plaintiff to revive his judgment so as to obtain execution after the lapse of this shorter period and before the expiration of the lien. In case he proceeds to revive his judgment by *scire facias*, this will not prolong the lien beyond the time prescribed by statute."

The same author, at section 394a, says: "The time during which judgments have the force of liens on the lands of judgment debtors is usually prescribed by statute. In many

instances, executions have been taken out and levies made within the time prescribed for the continuance of the lien, but so late that the sale did not take place until after the lapse of such time. In regard to such cases, so far as our observation has extended, it has, except in the State of Missouri, been uniformly held that the execution and levy did not continue the lien; and that to preserve the priority acquired by the judgment, the sale must be made during the statutory period. The title acquired at such a sale is, therefore, precisely the same as though the judgment had never been regarded as a lien." *Bagley* v. *Ward,* 37 Cal. 121; *Isaac* v. *Smith,* 10 Cal. 71; *Roe* v. *Swart,* 5 Cow. 294; *Little* v. *Harvey,* 9 Wend. 158; *Tufts* v. *Tufts,* 18 Wend. 621; *Davis* v. *Ehrman,* 20 Penn. St. 256; *James* v. *Wortham,* 88 Ill. 69; *Parsour* v. *Rhyne,* 82 N. C. 149.

The sale upon the execution issued on the judgment in favor of the board of commissioners having been made within the lifetime of this lien related back to the date of judgment, and the sale on the execution issued on the Cobbs judgment was subject to the lien of the judgment in favor of the board.

It follows, from the conclusion we have reached, that the court erred in overruling the demurrer to the complaint.

Judgment reversed, at costs of appellees, with instructions to sustain the demurrer to the complaint.

Filed Nov. 19, 1890.