MUNIZ, ETC. *v.* UNITED STATES ET AL.

[No. 18,935. Filed December 31, 1958. Rehearing dismissed March 5, 1959. Transfer dismissed March 30, 1959.]

*White & White,* of Covington, and *Fansler, Fauvre, Dongus & Chambers,* of Indianapolis, for appellant.

*Jack C. Brown,* former United States Attorney, *Don Tabbert,* United States Attorney, and *Philip R. Melangton, Jr.,* Assistant United States Attorney, for appellee United States of America.

BOWEN, J.—This is an appeal from a judgment of the court below approving the final report of the appellee, Charles A. Mickle, as Receiver of the appellee, Cabinet Craft Corporation of Attica, Indiana.

The appellant, who is a judgment creditor of such appellee corporation, filed exceptions to the final report of the appellee Receiver, which exceptions were overruled, and the lower court entered judgment approving the final report of the Receiver.

The appellant thereupon filed a motion for a new trial on the grounds that the finding and decision of the lower court was not sustained by sufficient evidence and that it was contrary to law, and that the conclusions of law upon the special findings of fact were each erroneous.

The motion for a new trial was overruled and this appeal followed.

Errors assigned for reversal are that the trial court erred in its conclusions of law numbered 1 and 2, and in overruling appellant's motion for a new trial. Such stated conclusions of law were that the law is with the Receiver, and that the objections of Joseph M. Muniz, as Trustee of Howard Profit-Sharing Liquidation Trust, to the Receiver's final report were overruled.

The facts in this case are undisputed in toto, and the errors assigned for reversal present a most important single question of law concerning the force and effect of the Federal statute, 31 USCA 191, which reads as follows:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

and the priority in a state receivership action of a judgment of a Federal District Court of the United States which was never transcripted, recorded, docketed, or indexed in Fountain County, Indiana, as against a judgment of a Circuit Court of this state which was fully perfected as a lien against the real estate of the debtor in accordance with the laws of the State of Indiana, §2-2706, Burns' 1946 Replacement. Notice must also be taken of Title 28, §1962, F. C. A., which provides as follows:

"Every judgment rendered by a district court within a State shall be a lien on the property located in such State in the same manner, to the same extent and under the same conditions as a judgment of a court of general jurisdiction in such State, and shall cease to be a lien in the same manner and time. Whenever the law of any State requires a judgment of a State court to be registered, recorded, docketed or indexed, or any other act to be done, in a particular manner, or in a certain office or county or parish, before such lien attaches, such requirements shall apply only if the law of

such State authorizes the judgment of a court of the United States to be registered, recorded, docketed, indexed or otherwise conformed to rules and requirements relating to judgments of the courts of the State.

The State of Indiana has passed the necessary enabling legislation to authorize the transcripting of the judgment of a Federal District Court to the county where the real estate is located. §2-2520, Burns' 1946 Replacement.

From the record it appears that the appellee, Cabinet Craft Corporation, owned real estate in Fountain County, Indiana, which it occupied and used as a factory. This real estate was encumbered by a mortgage to Radio Materials Corporation. On November 7, 1949, the United States government recovered a substantial judgment against said appellee corporation in the Federal District Court in Indianapolis, which was never recorded, transcripted, filed or entered or indexed in the records of Fountain County, Indiana, where said appellee corporation's real estate was located.

On November 14, 1949, the appellant recovered a judgment against said corporation in the Fountain Circuit Court, which judgment was immediately entered and indexed in full compliance with the Indiana statutes.

On October 18, 1949, the City of Attica, Indiana, filed suit on account against Cabinet Craft Corporation for $311.25 and subsequently filed a second paragraph of complaint asking for appointment of a receiver. Summons was issued, returnable on December 17, 1949, but on December 14, 1949, prior to return day, the cause was submitted by agreement, judgment was rendered for the plaintiff in the amount prayed for, and the appointment of Charles A. Mickle as receiver of Cabinet Craft Corporation was made permanent, and he quali-

fied as receiver. Thereafter the attorneys for the plaintiff and the defendant became attorneys for the receiver, and the receiver proceeded to liquidate the assets of the corporation, which consisted primarily of this real estate.

At the time of the appointment of the receiver, the real estate was encumbered by the mortgage, by a judgment for $1,900.59 in favor of General Accident, Fire and Life Assurance Corporation, Ltd., and by four United States Government tax liens, and by the judgment in favor of this appellant.

The receiver obtained an ex parte order to sell the real estate belonging to the corporation, in which the real estate was ordered sold free of liens, and the liens of the mortgage, taxes and judgments were ordered transferred and attached to the proceeds of the sale of said real estate in the hands of the receiver.

The receiver received from the sale of the real estate $63,000.00, and from the sale of other assets $2,608.09. The receiver then filed his final report and asked for authority to pay the expenses of the receivership, the mortgage lien, the prior judgment in favor of General Accident, Fire and Life Assurance Corporation, and the four tax liens in favor of the United States Government, and for authority to pay the balance to the United States Government on its claim on the judgment dated November 7, 1949.

The appellant filed objections to the final report, objecting to the payment of the claim of the United States Government, and asking that the balance be applied on the appellant's judgment lien. These objections were eventually overruled and the court held that the claim of the United States Government had priority over the judgment lien of the appellant.

There is not enough money left to pay either the United States Government or the appellant in full, and there will be no money left for any junior or common creditors. There have been no objections to the payment of the expenses of administration and the payment of the prior liens, so that the question presented by this appeal is simply, who gets the balance—the United States Government or this appellant.

Appellant bases his argument that he is entitled to the money from the real estate proceeds in priority over the claim of the United States Government upon three main propositions: (1) That appellant's judgment was a lien upon the corporation's real estate, which was final and perfect when the judgment was entered and indexed; (2) That the judgment of the United States, although dated ahead of appellant's judgment, was not a lien upon the real estate situate in Fountain County; and (3) That the priority provisions of the Federal Statute do not entitle the United States to be paid ahead of the judgment lien of the appellant.

The Indiana statute, §2-2706, Burns' 1946 Replacement, specifically provides that a judgment of a Circuit Court becomes a lien upon real estate of the judgment debtor in the following language:

"All final judgments for the recovery of money or costs in the circuit court . . . shall be a lien upon real estate and chattels real liable to execution where, and only where, such judgment has been duly entered and indexed in the judgment docket as provided by law, from and after the time the same shall have been so entered and indexed, and until the expiration of ten (10) years from rendition thereof . . ."

In order to create a lien upon personal property it is necessary to issue and levy execution, but in order to

create a lien upon real estate it is only necessary to enter and index the judgment in the county where the real estate is located. The amount of the lien is fixed by the judgment, and the time when it becoms a lien and when it ceases to be a lien is fixed by statute. The issuance or levy of execution adds absolutely nothing to the lien of a judgment on real estate. It is merely a method of collection. *Odell* v. *Green* (1919), 72 Ind. App. 65, 121 N. E. 304, 122 N. E. 791; *Wells* v. *Bower* (1890), 126 Ind. 115, 25 N. E. 603; *Pfeiffer Hardware Co.* v. *Auburn State Bank* (1937), 104 Ind. App. 472, 8 N. E. 2d 398.

The lower court found that appellant's judgment was rendered in Fountain County, that the real estate belonging to Cabinet Craft Corporation was located in Fountain County, that the description of said real estate was a matter of public record, and that appellant's judgment was duly entered and indexed in the Judgment Docket, as provided by law, on November 14, 1949. Therefore the judgment became an absolute and perfect lien on said real estate on that date. This lien was, by the order of court authorizing the receiver to sell the real estate, protected and transferred to the proceeds of the sale of this real estate.

The United States Government, however, insists that the "broad and sweeping language" of the statute's (R. S. 3466), 31 U. S. C. 191, *supra,* "clear command" that 'debts due to the United States shall be first satisfied' has been recognized as leaving little room for exception. Citing *United States* v. *Waddill Co.* (1945), 323 U. S. 353; *Illinois* v. *United States* (1946), 328 U. S. 8; *Massachusetts* v. *United States* (1948), 333 U. S. 611.

While it must be recognized that in the last few

years the Supreme Court of the United States, with a rising crescendo of dissents, has upheld the priority of the United States, mainly in cases involving the priority of the claim of a state for some kind of a tax lien which was not reduced to a certain or fixed amount, such cases usually involved the proceeds from the sale of personal property, not real estate.

The argument of counsel for the United States Government referring to the broad and sweeping language of the Federal statute and "clear command" thereof as to the satisfaction of debts due to the United States first, carries with it an innuendo which has been too frequently employed in recent years as to so-called Federal authority without due regard to the Tenth Amendment to the United States Constitution that the powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people.

A decision in the instant case requires a consideration of the decisions of the United States Supreme Court affecting the issue herein as to the force and effect of §191, Title 31, U. S. C. A. This statute, in its original form, seems to have been first enacted in 1797, as part of a statute dealing with revenue officers and the collecting of customs, which at that time was the only likely source of a debt owing to the United States. It was early decided that this statute did not give the United States a lien, but only a right of priority payment. *United States* v. *Fisher* (1804), 2 Cranch 358, 2 L. Ed. 304; *United States* v. *Hooe* (1805), 3 Cranch 73, 2 L. Ed. 370; *Beaston* v. *Farmer's Bank of Delaware* (1817), 12 Peters 102, 9 L. Ed. 1017. Chief Justice Marshall, in considering this statute, said in the Fisher case:

"On this subject it is to be remarked, that no lien is created by this law. No bona fide transfer of property in the ordinary course of business is over-reached";

and again in the Hooe case:

"In construing the statute on this subject, it has been stated by the court, on great deliberation, that the priority to which the United States are entitled does not partake of the character of a lien on the property of public debtors. This distinction is always to be recollected."

It was also held in the above entitled cases that the preference or right of priority does not arise until the event of insolvency, or in other words until the actual moment of the appointment of the receiver.

The next question decided by the Supreme Court concerned the nature or extent of this preference. In a series of decisions the court finally came to rest upon this proposition: that the United States was entitled to priority "out of the general funds of the debtor" or out of the "unencumbered estate of the insolvent," and that the priority of the United States did not affect "any lien, general or specific, existing when the event took place which gave the United States a claim of priority."

This construction of the statute was finally adopted by the court, only after it had explained away and denied as *obiter dictum* the language in *Thelusson* v. *Smith* (1817), 2 Wheaton 396, 4 L. Ed. 271, indicating that the priority defeated the rights of a judgment creditor.

Since the dictum in this case has sometimes been cited by text writers, it is necessary to examine it, and the succeeding cases which overruled it, and point out the development of the doctrine that the United States was given a preference of payment only out of the

general assets of the creditor, subject to any pre-existing liens.

The facts in the case of *Thelusson* v. *Smith, supra,* are simple. Thelusson recovered a judgment against one William Crammond. Later the United States recovered several judgments against Crammond on custom duty bonds, and issued execution and had the real estate of Crammond sold by the Marshal of the court, Smith. Thelusson then sued Smith to recover enough of the proceeds of the sale to satisfy the prior judgment.

Obviously, on this state of facts, the only question involved was the right of a prior judgment creditor to sue the sheriff for selling real estate on execution for a subordinate judgment creditor. Of course, Thelusson, the prior judgment creditor, could not recover from the marshal. His remedy was simply to levy and sell the property again. In order to recover against the marshal, Thelusson would have to prove not that he had a prior lien, but that he had actual title in himself. The court, in its opinion, indicated the priority right of the United States divested the lien of a judgment. This statement, pure dictum though it was, rose to haunt the court eleven years later when it came to consider the case of *Conard* v. *The Atlantic Insurance Company* (1828), 1 Pet. 386, 7 L. Ed. 189.

At this time the court still contained five of the justices who were on the bench at the time of the Thelusson case, including the author of that opinion. Nevertheless the court unanimously held that the lien of a respondentia bond was not divested by this Federal statute, and that the lien holder must be paid before the government. Justice Story in his opinion discusses the Thelusson case at length and points out clearly the question actually decided by that case:

"Before proceeding to the discussion of the right of the insurance company over the property in question, it may be well to consider what is the nature and effect of the priority of the United States, under the statute of 1799, ch. 128. Although that subject has been several times before this court, the observations which have fallen from the bar show that the opinions of the court have sometimes, not been understood according to their true import . . .

"It is admitted that where any absolute conveyance is made, the property passes so as to defeat the priority; but it is said that a lien has been decided to have no such effect, and that in the eye of a Court of Equity a mortgage is but a lien for a debt. Thelusson v. Smith (2 Wheat. 396) has been mainly relied on, in support of this doctrine. That case has been greatly misunderstood at the bar and will require a particular explanation.

". . . The case of Thelusson v. Smith (2 Wheat. 396) is not understood to justify any such conclusion. That case turned upon its own particular circumstances. . . . The posture of the case then was that of a judgment creditor seeking to recover the proceeds of a sale of land sold under an adverse execution, out of the hands of the marshal, upon the ground of his having a mere general lien, by his judgment, on all the lands of his debtor; that judgment never having been consummated by any levy on the land itself. The court decided that the action was not maintainable. The reasons for that opinion are not, owing to accidental circumstances, as fully given as they are usually given in this court. But the arguments of the counsel point out grounds upon which it may have proceeded, without touching the general question of lien. The plaintiffs were entitled to recover only upon the ground that they could establish in themselves a rightful title to the proceeds. . . .

". . . The real ground of the decision was that the judgment creditor had never perfected his title, by any execution and levy on the Sedgely estate; that he had acquired no title to the proceeds as his property, and that if the proceeds were to be deemed general funds of the debtor, the priority

of the United States to payment had attached against all other creditors; and that a mere potential lien on land did not carry a legal title to the proceeds of a sale made under an adverse execution."

After thus explaining the point actually decided in the Thelusson case and rejecting the dictum in that opinion, Justice Story lays down the rule that the priority applies only to the "general funds of the debtor" and does not divest a lien, regardless of whether the lien is accompanied by possession:

"What, then, is the nature of the priority thus limited and established in favor of the United States? It is a right which supersedes and overrules the assignment of the debtor as to any property which the United States may afterwards elect to take in execution, so as to prevent such property from passing by virtue of such assignment to the assignees? Or, is it a mere right of prior payment out of the general funds of the debtor in the hands of the assignees? We are of the opinion that it clearly falls within the latter description. The language employed is that which naturally would be employed to express such an intent, and it must be strained from its ordinary import to speak any other.

". . . But it has never been decided by this court that the priority of the United States will divest a specific lien attached to a thing, whether it be accompanied by possession or not . . . On the other hand, there are liens where the right is perfect, independent of possession; In none of these cases has it ever been decided that in a conflict of satisfaction out of the thing itself, the priority of the United States cut out the lien of the particular creditor . . ."

In a concurring opinion, Justice Johnson, who was also a member of the Court when it decided the Thelusson case, repudiates the dictum of that case in even stronger language:

"I concur in the opinion delivered in this cause, and the rather, because I think it overturns the report of the decision in the case of Thelusson v. Smith. It would be vain to endeavor to reconcile this decision with that which is imputed to the case referred to.

"This was nothing in its origin but a mortgage to The Atlantic Insurance Company; and a mortgage of a mere right, a metaphysical, transitory thing, over which the act of the party could not operate more immediately, or more forcibly, than a judgment upon land under the laws of Pennsylvania.

"But I avail myself of this occasion, and I have long wished for an opportunity to put on record some remarks upon the report of the case of Thelusson v. Smith. I have never acknowledged its authority in my circuit, on the point supposed to be decided by it; to wit, the precedence of the debt of the United States, as to a previous judgment, in the case of a general assignment."

Soon after this repudiation of the Thelusson dictum the Supreme Court had two more occasions to construe the priority statute. In *Brent* v. *The Bank of Washington* (1836), 10 Pet. 594, 9 L. Ed. 547, the Supreme Court upheld the lien of a bank on its own stock for indebtedness owing to it against the claim of government priority and said:

"It has never been decided that it (the priority of the United States) affects any lien, general or specific, existing when the event took place which gave the United States a claim of priority."

In the case of *Field* v. *United States* (1834), 9 Pet. 182, 9 L. Ed. 94, the court held that the claim of the United States should be paid only after the payment of all mortgages and preferred debts. The opinion of the District Judge, which is set out in the report, was reviewed by Chief Justice John Marshall, and the holding that the priority of the government applied only to

the general assets after the payment of all mortgages, judgments, and other liens was accepted by the Supreme Court, and no question was raised by Chief Justice Marshall as to the propriety of the District Judge's decision:

> "In the course of this opinion whatever *obiter dicta* I may have expressed *arguendo*, I wish to be explicitly understood as affirming the law to be that, whatever legal liens may have been attached to the property of the debtor of the United States prior to his insolvency, whether they arise from mortgages, judgments, or from the operation of State laws (if properly set forth and pleaded), so far devests the debtor of his property, *pro tanto*, as to exempt it from the claim of the United States.

> "It is to the unincumbered estate of the insolvent, devested of any pre-existing lien, that they must look for priority of payment, for, having no lien themselves on their debtor's property while it is under his own control, they cannot reach it in the hands of others, who have an implied right to it in the case of the nonpayment of the debt for which it is security . . ."

It is significant that since the repudiation of the Thelusson dictum in *Conard* v. *The Atlantic Insurance Company, supra,* and the explicit recognition of the priority of a judgment lien in *Brent* v. *Bank of Washington, supra,* and *Field* v. *United States, supra,* no case has even been taken to the Supreme Court involving a claim that a judgment lien was divested in favor of a claim of the government. These cases have been accepted as establishing the proposition that the priority of the United States extends only to the general assets of the insolvent creditor, subject to whatever liens have attached. In *United States* v. *Hahn* (1889), 37 Missouri App. 580, the court said:

> "It is now settled by a series of adjudications that the claim of the United States is entitled to no preference over the widows dower . . . nor over

liens to which the property has been subjected either by voluntary action of the debtor or in invitum."

For almost one hundred years after the Brent case and the Field case the Supreme Court was not troubled with the construction of this Federal statute. As noted before, within the last few years there have been several cases in which the court was called upon to construe this statute and decide whether the United States had priority over the claim of a state for some kind of tax lien which had not been reduced to a specific or fixed amount. However, most of these cases involved the proceeds from the sale of personal property, not real estate, and the Supreme Court (with a rising crescendo of dissent) has upheld the priority of the United States.

We wish to point out the distinction in the Indiana cases between liens of judgments on real estate and on personal property. Neither a judgment nor a state tax is a lien on *personal property* until a levy has been made. *Rothchild* v. *State* (1929), 200 Ind. 501, 165 N. E. 60; *Voigt, Admr.* v. *Ludlow Typograph Co.* (1938), 213 Ind. 329, 12 N. E. 2d 499.

In the case of a mortgage on real estate the lien is created upon the execution of the mortgage. In the case of a judgment the lien on real estate is created upon the entry of the judgment in the judgment docket. And, in both cases the lien is final and perfect from the moment of its creation.

The late cases in the Supreme Court of the United States seem to turn upon the question of whether the claimed lien has been perfected or is merely "the caveat of a more perfect lien to come." The court uses the term "caveat," "inchoate," and "a lis pendens notice" to indicate that the lien has not been perfected. The meaning of these terms is clear.

When a judgment has been entered and indexed, it is not a warning of a lien to come; it is from that very moment a lien. It is perfected and specific in the sense in which the Supreme Court has used these terms. The exact amount of the appellant's judgment had already been fixed by the court and the judgment could be enforced and collected without any further action on the part of the courts.

To hold that the United States Government as a judgment creditor is not required to follow the plain dictates of both Federal and State statutes in order to perfect its lien on real estate as a judgment creditor by any interpretation of another general statute containing the "broad and sweeping" command that debts of the United States Government must be paid first, appears to this court as carrying the "prerogative of the crown" to have its debts paid first, too far in the light of our Federal Constitution and guarantees therein contained.

When the only indebtedness to the Government likely to be in existence was the indebtedness of a customs collector, or on a customs bond, the rule did not work any hardship on business. But the situation is far different today when the Government is involved in so many phases of business transactions and may claim a debt for any reason, from a re-examination of the tax returns which has not yet been made, to a claim arising from the re-negotiation of a contract for defense work. When the government is involved, as it is today, in every phase of the lives of our citizens, it somehow seems that the government, in perfecting a lien upon real estate of free men, should be required to follow the requirements of established law and procedures in perfecting such lien so as to acquire priority as against other judgment holders, to the same extent as they are

required to perfect such judgment lien against any mortgage interest. This conclusion seems obvious and inescapable.

In both the bankruptcy act and the internal revenue act, Congress has specifically subordinated the claims of the United States to judgment creditors. § 3672, Title 26, U. S. C. A.; *Straton* v. *New* (1930), 51 S. Ct. 465, 283 U. S. 318, 75 L. Ed. 1060.

The Supreme Court has also refused to extend the priority given to the United States by a process of construction. *Mellon* v. *Michigan Trust Company* (1925), 46 S. Ct. 511, 271 U. S. 236, 70 L. Ed. 924; *United States* v. *Guaranty Trust* (1929), 50 S. Ct. 212, 280 U. S. 478, 74 L. Ed. 556; *Cook County National Bank* v. *United States* (1883), 2 S. Ct. 561, 107 U. S. 445, 27 L. Ed. 537.

We are unable to see any sound distinction between a receivership and a bankruptcy as far as the priority of a claim of the United States is concerned. In bankruptcy a claim of the United States has been specifically subordinated to a judgment lien and we think the same rule is applicable to a receivership. We have never found a case holding that the lien of a judgment was divested by the priority statute, and we think the repudiation of the Thelusson dictum in the Conard case and the specific recognition of the prior rights of creditor holding judgment liens in the Brent case and the Field case, which has gone unquestioned for more than one hundred years, indicate clearly that the lien of appellant's judgment was not divested by the appointment of a receiver.

The judges of both divisions of this court having been of the opinion that the questions involved in this cause

were of sufficient importance that the two divisions of this court should sit in banc for the consideration and decision of said cause, said court did so sit upon the decision of this court to such effect.

For the reasons given herein, the judgment lien of appellant was prior and superior to the lien of the judgment in favor of the United States Government, and the judgment of the lower court approving the final report of the Receiver was contrary to law, and the trial court erred in overruling appellant's motion for a new trial, and its conclusions of law numbered 1 and 2 were erroneous.

Judgment reversed with instructions to sustain appellant's motion for a new trial and for further proceedings not inconsistent herewith.

## On Petition for Rehearing

PER CURIAM.—The record before us reveals that the appellees' petition for a rehearing of this appeal was filed on the last day permissible under the Rules of the Supreme Court of Indiana. On the same day, a copy thereof was mailed to counsel for the appellant and received by them the following day.

The appellant herein has filed a motion to dismiss the appellees' petition for rehearing averring that the appellees failed to comply with Rule 2-13 of our Supreme Court.

The appellee in his brief in opposition to the appellant's motion to dismiss the petition for rehearing avers, "Since the copies" (the petition for rehearing) "mailed to appellant were postmarked as of January 20, 1959," (the last day under the rule to file said petition for rehearing) "service should be deemed to have been made on that day. Actual receipt took place the next morn-

ing. There should, therefore, be no basis for dismissing the petition for rehearing."

It is the appellees' contention that Rule 2-15A of the Supreme Court should apply and that since Rule 2-15A, which was adopted on June 26, 1956, effective September 1, 1956, being subsequent to this court's ruling in the case of *Matlaw Corp.* v. *War Damage Corp.* (1953), 123 Ind. App. 593, 112 N. E. 2d, 233, the same being the authority relied on by the appellant to support his motion to dismiss, is not controlling for the reason that this court, in the case of *Matlaw Corp.* v. *War Damage Corp., supra,* stated that no distinction could be drawn between a brief and a petition for rehearing with reference to the time for serving.

We are unable to agree with the appellees' contention for the following reasons:

It is apparent from a review of our authorities and the Supreme Court Rules that formerly no notice of the filing of a petition for a rehearing was necessary. See *Hanley* v. *Mason* (1908), 42 Ind. App. 312, 85 N. E. 381. Rule 2-13 of the Supreme Court, prior to 1943, provided that:

> "Notice to the party affected shall be given of all motions and petitions, *except petitions for rehearing* . . ." (Our emphasis.)

In 1943, this rule was changed so as to eliminate the exception as to petitions for rehearing. The present rule reads, as follows:

> "*Within the time allowed for filing motions and petitions,* and briefs in support thereof, *copies shall be served* upon the parties affected, or their attorneys of record, and proof of such service shall be made at the time of filing or promptly thereafter." (Our emphasis.)

Rule 2-13 has been held to apply to petitions for re-

hearings, as well as the brief filed in support thereof, and a failure to comply therewith requires a dismissal of the petition. *Matlaw Corp.* v. *War Damage Corp., supra; Norling* v. *Bailey* (1951), 121 Ind. App. 457, 462, 99 N. E. 2d 439.

Our court stated in the case of *Matlaw Corp.* v. *War Damage Corp., supra*, that:

> "Concerning an appellant's brief we have held that the mailing of a copy thereof to opposing counsel on the last day for filing the same is not a compliance with Rule 2-13 unless it was received by him on the same day it was mailed. *Wright* v. *Hines* (1945), 116 Ind. App. 150, 62 N. E. 2d 884; *Hoover* v. *Shaffer* (1948), 118 Ind. App. 399, 80 N. E. 569. No distinction between a brief and a petition for a rehearing can be drawn as the time for serving a copy of either upon the opposing party or his attorney is governed by the same rule."

In interpreting Rule 2-13, we believe the word, brief, used in said Rule applies solely to briefs in support of motions or petitions as provided for in Rules 2-12 and 2-22.

Rule 2-15A, upon which the appellees rely, applies only to briefs, and does not relate to the filing of motions and petitions, including petitions for a rehearing. The Supreme Court had judicial knowledge of the contents of Rule 2-13 at the time that they adopted Rule 2-15A, and, as they did not see fit to change, or modify said Rule, we are bound by Rule 2-13 as it now appears relating to petitions and motions.

This court on appeal is always reluctant to decide a case upon a failure to comply with the rules, but the rules have the force and effect of law and are binding on this court as well as the litigants. *State of Indiana* v. *Allison* (1956), 235 Ind. 294, 133 N. E. 2d 469.

Thus, it being apparent that the appellees did not, within the time allowed (20 days), serve upon the appellant herein, or his attorneys of record, a copy of the appellees' petition for a rehearing, the petition for a rehearing is dismissed.

NOTE.—Reported in 155 N. E. 2d 140.
Rehearing dismissed 156 N. E. 2d 641.