## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 08 2018, 5:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEES

Anthony J. Castor
Madison, Indiana

Stephen W. Voelker
Jeffersonville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Karleen Spann Perry, <br> *Appellant-Petitioner,* <br><br> v. <br><br> Larry Spann, <br> *Appellee-Respondent* <br><br> and <br><br> Madison Riverport, LLC c/o <br><br> Anthony Hammock <br><br> *Appellee-Garnishee Defendant* | February 8, 2018 <br><br> Court of Appeals Case No. <br> 39A01-1708-DR-1783 <br><br> Appeal from the Jefferson Circuit Court <br><br> The Honorable Darrell M. Auxier, Judge <br><br> The Honorable Jonathan N. Cleary, Special Judge <br><br> Trial Court Cause Nos. <br> 39C01-0303-DR-124 and 39C01-1512-MI-936 |

**Altice, Judge.**

## Case Summary

[1] Since the dissolution of marriage decree in 2005, Karleen Spann Perry has struggled to recover the equalization payment of over $3.3 million due her from her ex-husband, Larry Spann. Despite years of litigation and proceedings supplemental, Perry has generally been unsuccessful in her pursuits. Spann, who has since spent time in federal prison and gone through bankruptcy, still currently owes Perry over $5 million with accumulated interest included.

[2] Perry eventually turned her collection efforts toward various businesses owned in whole or part at various times by Spann. Relevant to this appeal, for more than a decade, Perry has pursued Madison Riverport, LLC as a garnishee defendant. Spann had sold his one-third ownership interest in Madison Riverport to Anthony Hammock shortly after the dissolution of marriage. Despite Hammock owning the property in question, Perry repeatedly failed to individually serve Hammock or make him a party to her various proceedings supplemental. In December 2015, Hammock's attorney filed a special appearance to protect Hammock's interest in Madison Riverport, as Perry was attempting to foreclose on this interest.

[3] After a September 2016 hearing on various pending motions, the trial court determined that Perry could not levy execution on Hammock's interest in Madison Riverport. In other words, the trial court concluded that Perry did not have an enforceable lien against this property, which had been sold to Hammock in 2005. The trial court, therefore, ordered all funds held in an

escrow account pursuant to a previous order to once again become an asset of Madison Riverport, with no future escrow required.

[4] Perry filed a motion to correct error in which she argued that the claims raised by Hammock in his motions were barred by res judicata. The trial court denied Perry's motion following a hearing. On appeal, Perry contends that the trial court committed clear error when it denied her motions to levy execution on the one-third interest in Madison Riverport and when it eliminated the associated escrow account.

[5] We affirm.

## Facts & Procedural History

[6] The history of this case is long and tedious. We will focus our attention on those parts of the record that are relevant to Perry's attempt to execute on the one-third interest in Madison Riverport previously owned by Spann.

[7] Perry and Spann became legally separated in March 2003, and the trial court issued a decree of dissolution on December 22, 2005, which was amended in February 2006. The decree set out the extensive assets of the marital estate, which included over 400 acres of real estate and multiple business interests. The trial court valued the assets and debts of the marital estate as of the date of separation, resulting in a net marital estate value of over $8 million. The court awarded the bulk of the marital assets to Spann and ordered him to pay a cash equalization payment of $3,364,298.50 to Perry, with interest accruing at 8%

from the date of the decree. The court placed a judgment lien on all of Spann's assets to secure the equalization payment.

[8] On December 27, 2005, five days after the decree of dissolution was issued, Spann sold his one-third interest in Madison Riverport and his stock in Matrans Construction, Inc. to Hammock for $25,000. In the decree of dissolution, the trial court had valued these assets at $27,000 and $0, respectively. This valuation, however, was based on the date of separation, which was in March 2003. Despite being aware of the transfer by at least July 2007, Perry did not file a fraudulent conveyance claim against Hammock and Spann regarding this transaction.[1] In fact, she did not file any action against Hammock until at least 2013. With respect to Spann's prior interest in Madison Riverport, Perry proceeded against Madison Riverport as a garnishee defendant in various proceedings supplemental from 2006 onward.

[9] On August 12, 2009, Perry filed her second verified motion for proceedings supplemental. Once again, she listed Madison Riverport among the long list of garnishee defendants. The trial court held an evidentiary hearing on November 6, 2009, at which Spann was the sole witness. At the conclusion of the hearing, Perry argued that she had a lien on the one-third interest in Madison Riverport that followed the 2005 transfer between Spann and Hammock. Perry also

---

[1] Perry sought to have other transactions – not involving Madison Riverport – declared void as being in violation of the Indiana Uniform Fraudulent Transfer Act, Ind. Code § 32-18-2-1 et seq. *See Appellant's Appendix Vol. II* at 106. Transfers are voidable under this act, which generally provides for a four-year statute of limitations. I.C. § 32-18-2-19.

suggested that the transfer may have lacked consideration and been fraudulent. Believing that a sale of Madison Riverport was imminent, Perry requested that the trial court order any proceeds of such sale be placed in escrow. The trial court observed that Spann had sold his interest in Madison Riverport to Hammock and then observed: "So if [Spann's] given it up, I don't think he has a dog in that fight. I could be ordering something that I get a phone call Monday from Mr. Hammock or one of these corporations saying, Judge, what are you doing". *Transcript Vol. II* at 114. Perry's counsel acknowledged that "obviously this is going to have to play out in these proceedings" but requested protection of the asset until things were sorted out. *Id.*

[10] On November 9, 2009, the trial court issued an extensive order that dealt with a number of issues. With respect to the one-third interest in Madison Riverport, the order provided as follows:

13. That at the time of the Decree of Dissolution on December 22, 2005, Larry Spann owned 20% of the stock in Matrans Construction, Inc. and 33 1/3% of the stock in Madison Riverport. The evidence shows that at the time of the Decree, Matrans Inc. had significant income from work orders with Indiana Kentucky Electric. Further, [Spann] testified that at the time of the Decree, and currently, Madison Riverport held property upon which Consolidated Grain and Barge holds an option to purchase for $600,000. Despite the clearly demonstrated value of the stock in both Matrans Construction Inc and Madison Riverport, [Spann] transferred all of his stock in both entities to [Hammock] for $25,000 on December 27, 2005. The Court finds that at the time of the transfer of such

stock, the stock was clearly subject to [Perry's] judgment lien, and said lien follows the stock.

14. That the Court heard testimony that there are current negotiations between Madison Riverport and both the City of Madison and Consolidated Grain and Barge involving the potential sale of the property owned by Madison Riverport. Because 1/3 of the stock in Madison Riverport is subject to [Perry's] judgment lien, the Court hereby orders Madison Riverport LLC, as Garnishee Defendant herein, to place 1/3 of proceeds of the sale or lease of such real estate in escrow *until all interested parties have had an opportunity to argue their positions to the court as to the proper disposition of said funds*.

*Appellant's Appendix Vol. III* at 20 (emphasis supplied).

[11] On December 8, 2009, Madison Riverport filed a motion for relief from the order, arguing that Perry failed to properly serve Madison Riverport with notice of the proceedings supplemental. Perry had served Madison Riverport in care of Larry Spann rather than in care of Anthony Hammock, who was the company's registered agent.

[12] The trial court held a hearing on the motion for relief on December 23, 2009. Perry and Madison Riverport were represented by counsel at the hearing. Before reaching the merits of the motion, Madison Riverport's attorney made some observations: 1) Madison Riverport is a limited liability company and does not have stock; 2) the court made no finding that Hammock was anything other than a bona fide purchaser of Spann's ownership interest in the company; and 3) Hammock, the owner of the personal property in question and the real

party in interest, had not been made a party to this action or given an opportunity to be heard. Counsel, thus, raised the issue of whether Hammock's ownership interest was "properly before the Court in order for the Court to have jurisdiction and enter an order affecting or encumbering that interest." *Transcript Vol. II* at 147.

[13] Perry's attorney responded that he was not prepared to address whether Hammock was a bona fide purchaser or whether Hammock had notice. Counsel requested a future hearing "on the substance of whether [Perry's] lien does in fact attach to that interest of Madison Riverport". *Id*. at 154. With respect to service on Madison Riverport, Perry argued that the service of process was sufficient and that the company had actual knowledge of the proceedings supplemental.

[14] At the conclusion of the hearing, the trial court found that Madison Riverport had been properly served but that Hammock had not been individually named or served as a party. Perry indicated a willingness to join Hammock individually but requested that the court continue the escrowing of funds until it could be determined whether the one-third interest was "attachable." *Id*. at 166. The trial court agreed but warned, "Hammock needs to be named now." *Id*. at 169. The CCS entry further reveals that the trial court ruled in relevant part: "Anthony Hammock individually must be named as a party and served before the Court can exercise jurisdiction over his individual interests." *Appellant's Appendix Vol. II* at 29. The court set the matter for a hearing on March 5, 2010. This hearing was rescheduled multiple times and never held.

Similarly, Hammock was not added as a party or served. Perry's attorney withdrew his appearance at the end of 2010.

[15] No activity in the case occurred until March 14, 2013, when a new attorney entered an appearance on behalf of Perry and filed a fourth verified motion for proceedings supplemental. Although Hammock was listed on the caption of the motion as a garnishee defendant, Perry failed to serve Hammock as a party. At a hearing on April 11, 2013, Perry's new counsel admitted this "oversight" and indicated that she would file an amended motion to formally name Hammock as a garnishee defendant. *Transcript Vol. II* at 182. Perry filed an amended motion on May 23, 2013, and it appears that Hammock may have been served for the first time in this case.

[16] On August 2, 2013, following a hearing, the transcript of which we do not have, the trial court entered an order denying Madison Riverport's and Hammock's motions to dismiss and ordering them to respond to interrogatories. The order provided further that Perry must seek leave of the court before Madison Riverport or Hammock would be ordered to appear for another hearing. Perry took no further action against Hammock or Madison Riverport for nearly two years.

[17] On May 13, 2015, again with a new attorney, Perry filed a motion to enforce prior order of court and for contempt. Perry sought enforcement of the November 9, 2009 order against Madison Riverport, which she claimed had not placed any proceeds into escrow. Later, Perry amended the motion to make

clear that she was seeking a contempt finding against Madison Riverport, not Spann. Perry did not serve Hammock individually with this motion.

[18] The trial court held a hearing on the motion to enforce on September 4, 2015. Once again, Madison Riverport's attorney observed that the personal property in question was owned by Hammock, not the company, and that Perry had never established that Hammock obtained the property via a fraudulent transfer. Counsel noted further that Hammock was not a party to the action when the November 2009 order was entered and, thus, did not have an opportunity to defend his ownership interest in Madison Riverport.

[19] Perry's attorney acknowledged that the time had likely passed for determining that the transfer was fraudulent. Counsel, however, continued to point to a lien created by the November 2009 order. When the court expressed concern over how a lien could be attached to property sold four years earlier, counsel responded:

> [T]he only argument I can have to the Court is that obviously those arguments must have been made back in 2009. I was not involved in the hearings back then…. I can't go back and – and figure out what arguments were made. All I'm looking at is I've got an order from a Judge saying, yes, she has a lien on it and we're asking this Court to enforce that prior order of the Court.

*Id*. at 210-11. Counsel acknowledged that Hammock "could very well be an interested party" and clarified that Perry simply wanted the funds held in escrow until an evidentiary hearing could be held to determine the proper distribution of the funds. *Id*. at 220.

[20] Immediately following the hearing on September 4, 2015, the trial court issued an order providing in relevant part:

1. 1/3 of the Net Ordinary Income from November 9, 2009 to current from Madison Riverport LLC shall be placed in an escrow account. This Order is required under paragraph 14 of the November 9, 2009 Order…. *All interested persons, including but not limited to Anthony Hammock, may request a hearing to argue their positions to the Court as to proper disposition of the approximately $6,243.81 and future net income. If Karleen Perry, Larry Spann, or Madison Riverport, LLC requests a hearing, they shall serve Anthony Hammock by sheriff or certified mail.*

2. The Court denies Karleen Perry's request that Madison Riverport, LLC be found in contempt of Court due to the legal complexities that were raised concerning the differences in the 2005 Divorce Decree and 2009 Proceedings Supplemental Order.

****

*Appellant's Appendix Vol. III* at 85 (emphasis supplied).

[21] New counsel – Perry's fifth by our count – appeared on December 21, 2015, filing a motion for leave to levy execution on one-third of Madison Riverport's stock.[2] Although Perry once again failed to serve Hammock individually, Hammock's attorney filed a special appearance in the matter. Hammock filed

---

[2] On this date, Perry also initiated a parallel action, Cause No. 39C01-1512-MI-936 (the Miscellaneous Action) by filing a complaint against Spann and Madison Riverport to renew judgment lien. Perry obtained a default judgment on April 19, 2016, which Madison Riverport promptly sought to set aside.

motions and a brief arguing, among other things, that he had never been properly made a party and that Perry had failed to timely file a complaint alleging a fraudulent transfer.

[22] On September 23, 2016, the trial court held a hearing to address all pending motions.[3] Perry argued that the November 2009 order established that the 2005 transfer between Spann and Hammock constituted a fraudulent transfer and that this determination could not be collaterally attacked this many years later. Hammock disputed whether any such determination had been made and observed that, regardless, he could not be bound by the November 2009 order, as he was not a party to those proceedings. In sum, Hammock argued that no valid lien attached to the personal property – the one-third ownership interest in Madison Riverport – that he purchased from Spann in 2005.

[23] The trial court issued an order on September 30, 2016. In addition to denying Perry's motion to levy execution on stock, the court granted Hammock's motions and ordered: "the disposition of the approximately $6,243.81 and subsequent future net income which was placed in an escrow account pursuant to the Court's September 4, 2015 Order shall become an asset again of Madison Riverport, LLC and is no longer required to be escrowed or frozen." *Id*. at 109.

---

[3] In this consolidated hearing, the trial court also considered the Trial Rule 60 motion filed by Madison Riverport in the Miscellaneous Action. The trial court ultimately set aside the default judgment. Perry does not appeal this portion of the trial court's order.

Perry filed a motion to correct error on October 31, 2016, arguing that the issues raised by Hammock at the hearing were barred by "res judicata, trial rule filing deadlines, laches or statutes of limitation." *Id*. at 111. Following a brief hearing, the trial court denied Perry's motion to correct error on April 24, 2017. Perry now appeals.[4]

## Discussion & Decision

Perry's arguments reflect a fundamental misunderstanding of what actually occurred below. Essentially, Perry argues that the November 2009 order conclusively established that her lien survived the transfer between Spann and Hammock and that Hammock was bound by this order because he did not appeal. Further, Perry asserts that the trial court's December 2009 order constituted a final judgment on the issue of personal jurisdiction with respect to both Hammock and Madison Riverport.

As the lengthy procedural history set out above reveals, critical issues remained unresolved after the 2009 orders and no final judgment had been issued regarding the personal property in question. In the November 2009 order, the trial court determined that Perry's lien survived the transfer between Hammock and Spann. But the record unquestionably establishes that the trial court did

---

[4] In a "motion for consideration" filed in this court, Perry expressed confusion regarding whether the relief from judgment in the Miscellaneous Action affected the finality of the consolidated order, which also addressed the proceedings supplemental in the dissolution action. We conclude that the consolidated order was final, as nothing remained to be determined regarding Perry's alleged lien against Hammock's one-third interest in Madison Riverport.

not have personal jurisdiction over Hammock when it issued this order, which directly affected his property. Indeed, in the December 2009 order, the trial court ruled: "Anthony Hammock individually must be named as a party and served before the Court can exercise jurisdiction over his individual interests." *Appellant's Appendix Vol. II* at 29. This came after a hearing in which the trial court warned Perry that "Hammock needs to be named now." *Transcript Vol. II* at 147. Perry indicated a willingness to join Hammock, but requested that the funds remain escrowed until it could be determined whether the one-third interest was "attachable." *Id.* at 166. The trial court agreed and scheduled a future hearing, which was rescheduled multiple times and never held. The case then lingered for several years with Perry failing to serve Hammock in an attempt to establish that her lien attached to his one-third interest in Madison Riverport.

[26] Nearly six years later, in May 2015, Perry filed a motion to enforce the November 2009 order against Madison Riverport. This motion overlooked the December 2009 hearing and order, which made clear that Hammock was a necessary party to the proceedings supplemental and that it remained to be determined whether the lien attached to his one-third interest. When this gaffe was raised at a subsequent hearing, Perry acknowledged Hammock's likely interest in the litigation and requested, as she did in 2009, that the funds be held in escrow pending a hearing to determine their proper distribution. Accordingly, on September 4, 2015, the trial court ordered that the funds continue to be held in escrow and that all interested persons, including

Hammock, could request a hearing to argue the proper disposition of the funds. The court's order provided that if Perry requested such a hearing, she must serve Hammock by sheriff or certified mail.

[27] In December 2015, rather than request a hearing as described above and serve Hammock, Perry filed a motion for leave to levy execution against Madison Riverport. Hammock's attorney filed a special appearance to protect Hammock's property from execution. At a September 2016 hearing, the issue regarding whether Hammock's property was subject to Perry's lien was finally litigated between Hammock and Perry, the real parties in interest. This issue, which had remained unresolved since December 2009, was conclusively determined by the trial court in its September 30, 2016 order. The trial court found in favor of Hammock.

[28] On appeal, like at the September 2016 hearing, Perry hangs her hat on an argument that Hammock cannot collaterally attack the November 2009 order, which found that the lien survived the transfer between Spann and Hammock. Perry disregards the fact that Hammock was not a party to those proceedings, and she blatantly ignores the December 2009 hearing and order. Even a cursory review of the December 2009 proceedings reveals that no conclusive determination had been made regarding Hammock's property because Perry had yet to make him a party. Thereafter, Perry failed time and again to establish her lien against this property.

[29] It has long been the law in Indiana that in order to create a lien on personal property, as opposed to real estate, it is necessary to issue and levy execution. *See e.g., Rothchild v. State*, 165 N.E. 60, 60 (Ind. 1929) ("A judgment without an execution in the hands of an officer authorized to execute it is not a lien on personal property."); *Ralston Purina Co. v. Detwiler*, 364 N.E.2d 180, 182 (Ind. Ct. App. 1977) ("since the evidence herein discloses that no levy was ever made on the shares of Chapel Eggs stock specifically, the same were never encumbered by the purported [judgment] lien"); *Muniz v. U.S.*, 155 N.E.2d 140, 143 (Ind. Ct. App. 1958) ("to create a lien upon personal property it is necessary to issue and levy execution , but in order to create a lien upon real estate it is only necessary to enter and index the judgment in the county where the real estate is located"). The record does not establish that Perry issued and levied execution on Spann's one-third interest in Madison Riverport before he transferred this property to Hammock. We acknowledge that Spann acted swiftly in selling his interest to Hammock after the dissolution decree was entered, and Perry might have had a viable fraudulent transfer action. But she wholly failed to properly and timely seek to have the transfer voided as a fraudulent transfer.

[30] Perry's general judgment lien did not survive the 2005 transfer and, thus, she has no enforceable lien against the property held by Hammock. Accordingly, the trial court properly rejected her belated attempt in 2015 to levy execution on Hammock's property.

[31] Judgment affirmed.

May, J. and Vaidik, C.J., concur.